ROGERS, J., delivered the opinion of the court, in which VAN TATENHOVE, D.J., joined, and GRIFFIN, J., joined in the result. GRIFFIN, J. (pp. 376-83), delivered a separate opinion concurring in the judgment.
OPINION
ROGERS, Circuit Judge.
The defendant, Joseph Michael Krul, appeals his sentence on the ground that the sentencing judge based the length of his sentence on rehabilitative goals, contrary to the holding of Tapia v. United States, — U.S. -, 131 S.Ct. 2382, 2392, 180 L.Ed.2d 357 (2011). That case, however, requires reversal only where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation. In this case there is no such basis.
In the summer of 2009, the then-felon Krul took a 9mm Glock handgun out of his friend’s basement. Krul provided the firearm as collateral for a drug deal, but the dealer refused to return it to Krul after the deal was completed. A chain of transfers eventually brought the weapon into the hands of Roderic Dantzler, who used *373 the weapon on a murderous spree. There is no indication that Krul could have anticipated that Dantzler would ever come into possession of the gun, or that the gun would be used to cause such havoc. Those involved in transferring the firearm were targeted for prosecution. The one to whom Krul initially transferred the gun cooperated with law enforcement authorities, and eventually Krul and the one that transferred the weapon to Dantzler were indicted.
Krul pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, both the Government and Krul’s counsel agreed that the proper Sentencing Guidelines range, based on the offense of conviction and Krul’s prior criminal history, was 51 to 63 months. The court sentenced Krai to 63 months of imprisonment, to be followed by three years of supervised release with various strict conditions.
Krul now appeals, arguing that some of the court’s statements during sentencing imply that the comet impermissibly factored rehabilitation into the length of his prison sentence. Although rehabilitation is a main theme of the sentencing hearing, the transcript does not reveal the particular improper purpose that Krul claims it does. Rather, the record demonstrates that the district court carefully considered rehabilitation for other, permissible purposes and that Krul invited the discussion of rehabilitation by emphasizing rehabilitation during his own statement.
During the hearing, the sentencing court discussed its reasons for imposing the sentence. The court began by stating that “what really troubles [it] the most in this matter” was Krul’s extensive criminal history, starting at the age of fourteen when he was charged with unarmed robbery, passing through early adolescence with four drunk-driving convictions, numerous assaults (including domestic), and other assorted charges, and finally arriving at the present federal felony. After reciting the litany of Krul’s prior criminal offenses— over thirty — the court discussed Krai’s mental health history, including a diagnosis of Oppositional Defiant Disorder and a history of substance abuse. At this point, the district court made the following statements, which contain everything relied upon by Krul to assert a Tapia violation:
So that brings us to today, and that brings us to the question of the sentence, looking at the nature and circumstances of this offense in light of the history I have just recited in conclusive form. I think this was a serious offense. It showed part of a continuation of no respect for laws, no respect for orders that we all in a community and a society have to follow. And I’m sure you have an explanation for every one of them. Someone ticked you off, someone disrespected you, things weren’t the way they should have been. But I have to afford — this sentence has to afford an adequate deterrence to criminal conduct and certainly has to protect the public and provide you with some educational, correctional, and medical treatment at the same time. It’s a tough balance to follow in this matter.
I think it requires that you be taken out of the community for a while and you be given some programmatic opportunities, some of which you’ve already started. Forgotten Man Ministries and other such things you’ve already started as a way to come to terms with who you are and how you’re going to behave for the rest of your life.
You understand what I’m looking at as a 31-year-old is I’m looking at the rest of your life. Where are you going to be when you’re 41? Where are you going to be when you’re 51? Where are you *374 going to be when you’re 61? That’s what concerns me. I see where you’ve been when you were 21 and I now see where you are at 31, and I don’t like the direction we’re heading. We’ve got to stop. We’ve got to look at this a little differently.
The sentence of this Court will be 63 months in the custody of the Federal Bureau of Prisons. That’s the high end of the sentence guideline range. I thought of going higher. I think there’s plenty of reason for going higher, but that would enmesh us in an appeal and a bunch of other things. But I think 61 months (sic) should be able to give the Federal Bureau of Prisons an opportunity to provide you with education, educational opportunity, and will give you a mental health evaluation and placement and presumably some medication that will deal with your emotions, that will deal with your ability to interact sociably with other people, will give you the ability to hold your anger in check, and will give you an understanding that laws must be obeyed.
The first two paragraphs clearly do not raise a Tapia concern, because they address the overall sentence, and not just incarceration. When the district court stated that Krul’s “sentence has to afford an adequate deterrence to criminal conduct and certainly has to protect the public and provide you with some educational, correctional, and medical treatment at the same time,” the court was discussing the overall sentence, which includes both the period of incarceration and the conditions of supervised release. Supervised release is part of a sentence. Indeed, for Krul’s three years of supervised release, the court imposed many behavioral and psychological treatment regimens, including a mental health treatment program, a prohibition on alcohol and drugs, an injunction against associating with other ex-felons, and mandatory participation in cognitive behavioral therapy. These conditions of supervised release, designed to habituate Krul away from his prior drug-motivated criminal tendencies, reflect valid and reasonable rehabilitative goals.
Tapia is based on a sentence in the statute — the “recognizing” clause — that limits only the length of imprisonment, not other parts of the sentence. Section 3582(a) states:
The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.
18 U.S.C. § 3582(a) (emphasis added). This language by its very terms constrains only “a sentencing court’s decision both to impose and to lengthen a prison term.” Tapia, 131 S.Ct. at 2389-90. Section 3553(a)(2)(D)’s requirement that the sentencing judge consider “the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment” continues to apply to the judge’s imposition of terms of punishment other than imprisonment, such as supervised release and probation. See Tapia, 131 S.Ct. at 2387-88.
It is, therefore, perfectly consistent with the Tapia holding for the district court to rely on providing rehabilitation in support of an overall sentence that includes supervision as well as imprisonment. Indeed, even with respect to incarceration, the Tapia Court confirmed the basic principle that “a court properly may address a person who is about to begin a *375 prison term about the[] important matters” of rehabilitation and the opportunity for specific treatment programs in prison. Tapia, 131 S.Ct. at 2392.
Thus, it is only the final paragraph of the above quote that even arguably runs afoul of Tapia. But the district court nowhere in that paragraph suggested that the imprisonment was lengthened to permit participation in a rehabilitative program. The context shows that the court was at pains to show why the term was shorter than what the government requested. In doing so, the court wanted to assure the defendant that the types of programs he desired were still available. Indeed, Krul invited this commentary on rehabilitation. Earlier during the hearing, Krul professed, “I will use this time for rehabilitation to better myself and my role in society.” He then assured the court that he would “enroll in any class, course or program ... offered” to him. After this promise, the court’s discussion of treatment options appears as assurance that such programs will be available, not as a basis for lengthening incarceration.[1] Moreover, the law of this circuit, of which the court was doubtless aware, prohibited the extension of incarceration terms for rehabilitative purposes. See, e.g., United States v. Walker, 649 F.3d 511, 513-14 (6th Cir.2011).
Tapia was much different. In Tapia, the district court pegged the length of the sentence to accommodate a particular drug treatment program within the prison system, stating explicitly: “[0]ne of the factors that affects [the sentence] is the need to provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program, number one.” 131 S.Ct. at 2385. The Supreme Court construed this statement as “indicating] that Tapia should serve a prison term long enough to qualify for and complete that program.” See id. Moreover, the Tapia Court was addressing a district court sentencing in the Ninth Circuit, which at that time clearly permitted the ability to complete rehabilitative programs as a factor in determining the length of imprisonment. See United States v. Duran, 37 F.3d 557, 561 (9th Cir.1994); see also Tapia, 131 S.Ct. at 2394 (Sotomayor, J., concurring).
It is true that Tapia contains language that might be read expansively to require a resentencing whenever there is a “possibility” that permitting rehabilitation extended the length of the sentence of imprisonment. The Court there reversed because “the sentencing transcript suggests the possibility that Tapia’s sentence was based on her rehabilitative needs.” Tapia, 131 S.Ct. at 2392 (emphasis added). But this cannot mean that reversal is required whenever it is merely possible that rehabilitation drove the length of imprisonment. Such an expansive reading would effectively require, district courts to disavow explicitly such a possibility to avoid reversal. The Supreme Court did not require this. Instead, the Court went on to say that
the [sentencing] court may have done more — ... it may have selected the length of the sentence to ensure that Tapia could complete the 500 Hour Drug Program. “The sentence has to be suf *376 ficient,” the court explained, “to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program.” ... These statements suggest that the court may have calculated the length of Tapia’s sentence to ensure that she receive certain rehabilitative services. And that a sentencing court may not do. As we have held, a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.
Id. at 2392-93 (emphasis added).
Here, the district court’s statement that a certain term of imprisonment will provide an opportunity to rehabilitate Krul does not indicate that it did what the lower court in Tapia impermissibly did, namely “suggest that the court may have calculated the length of Tapia’s sentence to- ensure that she receive certain rehabilitative services.” See id. at 2393.
The judgment of the district court is affirmed.

. Because rehabilitative programs, such as the Residential Drug and Alcohol Program that was central to Tapia, are located only at certain prisons, district court judges frequently provide treatment program recommendations, along with a detailed discussion of why a defendant should be placed in such a program, to help ensure that the Bureau of Prisons places the defendant in a better suited facility. The Tapia Court commended the practice of a district court’s "trying to get [the defendant] into an effective drug treatment program.” 131 S.Ct. at 2392.