NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2070
_____

UNITED STATES OF AMERICA

v.

JUAN PABLO FLORES-JUAREZ,
a/k/a Leonardo Valencia-Flores,
a/k/a Efrain Tlehuactle Flores

Juan Pablo Flores-Juarez,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-16-cr-00343-001
District Judge: Honorable Paul S. Diamond

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 18, 2018

Before: SMITH, *Chief Judge*, GREENAWAY, JR. and KRAUSE, *Circuit Judges*

(Opinion Filed: February 27, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

After Juan Pablo Flores-Juarez pled guilty to one count of illegal entry after deportation, the District Court sentenced him to eighteen months' imprisonment to be followed by one year of supervised release, an upward variance from the Sentencing Guidelines range of two to eight months' imprisonment. Flores-Juarez appeals this sentence, claiming that the District Court improperly considered rehabilitation. We will affirm the sentence imposed by the District Court.

I.

Flores-Juarez was charged with one count of unlawful reentry pursuant to 18 U.S.C. § 1326(a). He pled guilty. During the plea colloquy, Flores-Juarez admitted, among other things, that he had been deported from the United States on seven previous occasions.[1] Nevertheless, he had been charged with illegal reentry only once before, and received a thirty-day sentence on that charge. Although the maximum penalty for unlawful reentry is two years' imprisonment followed by a one-year period of supervised release, the Sentencing Guidelines range calls for two to eight months' imprisonment. The Government recommended that Flores-Juarez be sentenced within that range, while Flores-Juarez advocated that he be sentenced to time served.

Prior to sentencing, the District Court notified the parties that it was considering "a significant upward variance to deter [Flores-Juarez] from coming into the country illegally a[ ninth] time" and requested written briefing on that subject. J.A. 56–57. At

---

[1] Flores-Juarez was previously deported on June 18, 2007, July 27, 2009, August 11, 2009, August 13, 2009, August 15, 2009, February 8, 2010, and May 4, 2010.

sentencing, the District Court considered the parties' briefs and the pre-sentence investigation report. The District Court

> considered the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment to avoid adequate [*sic*] returns to criminal conduct, and to protect the public from any further crimes this defendant might commit. Perhaps more than any other case I've had in the 13 years I've been here, this defendant needs to be deterred from illegally re-entering the United States. . . . I have considered the need to provide the defendant with educational/vocational training and medical care. . . . I've considered the need to avoid unwarranted sentencing disparities and the need to provide restitution to victims.

J.A. 85–86.

Ultimately, the District Court decided that "an upward variance is important and reasonable here in light of this defendant's refusal to stay out of this country." J.A. 88. The District Court therefore sentenced Flores-Juarez to a term of eighteen months' imprisonment to be followed by one year of supervised release. Flores-Juarez then timely filed this appeal. He completed his term of imprisonment and was deported to Mexico. His term of supervised release is scheduled to conclude in November 2018.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Before we may consider the merits of this appeal, we must be satisfied that we have jurisdiction. *See United States v. Jackson*, 523 F.3d 234, 237 (3d Cir. 2008).

Article III, Section 2 of the Constitution of the United States prohibits us from entertaining an appeal in the absence of a live case or controversy. And a case or controversy must exist through all stages of the litigation. *Spencer v. Kemna*, 523 U.S. 1,

3

7 (1998). Where an individual has been unconditionally released from criminal custody, there generally is no longer a live case or controversy for Article III purposes. *St. Pierre v. United States*, 319 U.S. 41, 42 (1943); *United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002). There is a long-recognized exception, however, which acknowledges that a live case or controversy remains where an individual suffers a continuing injury from the collateral consequences of a criminal sentence. *Sibron v. New York*, 392 U.S. 40, 55–56 (1968).

Flores-Juarez challenges his now-concluded term of imprisonment. For us to assume jurisdiction, he must demonstrate that he suffers collateral consequences. *See Jackson*, 523 F.3d at 241. Both Flores-Juarez and the Government agree that he does, because he is serving a term of supervised release and this appeal raises a possibility of credit against the term of supervised release for improper imprisonment. *See Jackson*, 523 F.3d at 241; *see also United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015). This would ordinarily satisfy our obligation to ensure that we have jurisdiction. *See*, *e.g.*, *United States v. Mateo-Medina*, 845 F.3d 546, 554 n.43 (3d Cir. 2017). Here, however, we must additionally consider whether Flores-Juarez's deportation has removed him from all practical consequences of his term of supervised release and, effectively, has resulted in his unconditional release.

An individual who has been deported is not in ongoing contact with a probation officer and is not actively supervised. *See* Overview of Probation and Supervised Release Conditions, Ch. 3, § D(3), http://www.uscourts.gov/services-forms/immigration-related-requirements-probation-supervised-release-conditions (last visited Jan. 25, 2018).

Although the individual's file is considered "inactive," the probation office conducts a criminal records check six months after deportation and then annually until expiration of the term of supervision. *Id.*

We have held in a different context that "supervised release is not automatically extinguished by deportation." *United States v. Williams*, 369 F.3d 250, 252–53 (3d Cir. 2004).[2] We have observed that a deported individual may remain subject to certain conditions of supervised release, such as a directive to remain outside of the United States following deportation. *Id.* at 253. Notably, the Sentencing Guidelines provide that the imposition of supervised release on a deportable alien may provide "an added measure of deterrence and protection" in an appropriate case. *See* U.S.S.G. § 5D1.1, cmt. n.5. That a term of supervised release may have deterrent and protective effects after deportation implicitly recognizes that supervised release continues to have practical consequences. *See United States v. Heredia-Holguin*, 823 F.3d 337, 341 (5th Cir. 2016) (en banc) (a deported defendant subject to supervised release may challenge the term of supervised release because deterrence qualifies as an injury); *see also* 18 U.S.C. § 3583(d) ("If an alien defendant is subject to deportation, the court may provide, as a

---

[2] In *Williams*, the defendant was deported and returned illegally to the United States during his term of supervised release. When the Government initiated a supervised release revocation proceeding pursuant to 18 U.S.C. § 3583, Williams argued that the court lacked jurisdiction because his removal had extinguished the supervised release term. We disagreed, noting that the language of 18 U.S.C. § 3583(d) makes clear that Congress anticipated that some individuals subject to supervised release would be deported, but chose not to provide for automatic termination of supervised release upon deportation. *Williams*, 369 F.3d at 252.

condition of supervised release, that he be deported and remain outside the United States. . . .").

Despite his deportation, Flores-Juarez remains subject to certain restrictions of supervised release including, among other things, the condition that he "shall not re-enter the United States without the written permission of the Attorney General." J.A. 6. If he re-enters the United States, whether lawfully or unlawfully, he will be subject to active supervision for the remainder of the supervised release term. *Id.*; Overview of Probation and Supervised Release Conditions, Ch. 3 § D(5). And, if he re-enters in violation of the supervised release terms, he will as a consequence be subject to revocation proceedings and re-imprisonment.[3] 18 U.S.C. § 3583(e).

---

[3] Illegal reentry is a crime that may be separately prosecuted. As we have recognized, possible effects stemming from the hypothetical commission and conviction of a future crime are too remote to give rise to an Article III case or controversy. *Kissinger*, 309 F.3d at 182. Yet we view the possibility of a hypothetical future conviction as a separate consideration from the ongoing restriction on reentry currently imposed by the conditions of Flores-Juarez's supervised release. *See Heredia-Holguin*, 823 F.3d at 342 ("[E]ven though illegal reentry is already prohibited by law, as a condition of supervised release, it subjects [the defendant] to the procedures applicable to revoking supervised release, which among other diminished rights only require proof by a preponderance of the evidence, as well as the potential of a lengthier sentence.").

6

Thus, we are satisfied that Flores-Juarez's removal does not result in his unconditional release. This appeal therefore is not moot.[4] Accordingly, we proceed to the merits of this appeal.[5]

### III.

On appeal, Flores-Juarez contends that: (1) the District Court imposed the sentence in violation of the Supreme Court's decision in *Tapia v. United States*, 564 U.S. 319 (2011), and (2) the District Court was mistaken in its view that rehabilitative services are available to prisoners subject to deportation. Because Flores-Juarez failed to present these objections to the District Court in the first instance, we review the sentence imposed for plain error. *United States v. Flores–Mejia*, 759 F.3d 253, 258 (3d Cir. 2014). To prevail on plain error review, Flores-Juarez must show that there was an error, that it was plain (*i.e.*, clear under current law), and that it affected his substantial rights (*i.e.*, that it affected the outcome of the proceeding). *United States v. Olano*, 507 U.S. 725, 733–34 (1993). If these requirements are met, then the Court may exercise its discretion to address the forfeited error, but only if it seriously affected the fairness, integrity, or public

---

[4] Flores-Juarez's inability to appear in person for resentencing also does not moot this appeal, as his presence would not necessarily be required for a modification of supervised release. *See* Fed. R. Crim. P. 32.1(c)(2).

[5] We exercise jurisdiction to review the District Court's judgment of sentence pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

reputation of the judicial proceeding. *United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

## A.

Under 18 U.S.C. § 3582(a), "imprisonment is not an appropriate means of promoting correction and rehabilitation." In *Tapia v. United States*, the Supreme Court unanimously held that "[s]ection 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." 564 U.S. at 332; *see also United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007). So, while "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," *Tapia*, 564 U.S. at 334, a court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation," *id.* at 335.

In the course of the proceeding, the District Court stated, "I have considered the need to provide the defendant with educational/vocational training and medical care. I believe the defendant would benefit from drug and alcohol counseling and treatment. His pre-sentence report indicates he would also benefit from vocational training so he would have a legitimate means to provide for himself when he returns to Mexico." J.A. 86. Flores-Juarez argues that these statements indicate that the District Court committed *Tapia* error.

As Flores-Juarez observes, Courts of Appeals have taken varying approaches in analyzing the degree to which *Tapia* permits rehabilitation as a sentencing consideration. Some Circuits have adopted Flores-Juarez's view that any consideration of rehabilitation

8

is *Tapia* error.  *See United States v. Thornton*, 846 F.3d 1110, 1116 (10th Cir. 2017); *United States v. Vandergrift*, 754 F.3d 1303, 1310 (11th Cir. 2014).  Other Circuits have held that *Tapia* error occurs only if rehabilitation is the "driving" or "motivating" force in determining the length of a sentence.  *United States v. Del Valle-Rodriguez*, 761 F.3d 171, 175–76 (1st Cir. 2014); *United States v. Krul*, 774 F.3d 371, 375 (6th Cir. 2014); *United States v. Lifshitz*, 714 F.3d 146, 150 (2d Cir. 2013); *United States v. Replogle*, 678 F.3d 940, 943 (8th Cir. 2012).

Flores-Juarez recognizes that our Court has not weighed in on where to draw the line between permissibly "discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs" and impermissibly "imposing or lengthening a prison term because the court thinks an offender will benefit from a prison treatment program."  *Tapia*, 564 U.S. at 334.  He suggests that we should decide today where to draw the line, and then conclude that the District Court crossed that line by "consider[ing]" rehabilitation.  J.A. 86.

For an error to be "plain," it must be "clear or obvious rather than subject to reasonable dispute."  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  The existence of divergent interpretations among the Courts of Appeals demonstrates a reasonable dispute about how to apply *Tapia*.  *See, e.g., Vandergrift*, 754 F.3d at 1309 ("Because the Supreme Court has not ruled on the issue and there is a circuit split, any alleged error cannot be 'plain.'"); *Thornton*, 846 F.3d at 1118 (no plain error because there is an absence of controlling authority and "this case involves some legal nuances that are not obvious").  Thus, the very existence of a Circuit split leads us to conclude that, even if we

were to find *Tapia* error, Flores-Juarez simply cannot show that such error was "plain." Accordingly, he cannot prevail on his *Tapia* claim.

B.

Next, Flores-Juarez argues that any discussion of rehabilitative services at sentencing was plain procedural error because individuals like Flores-Juarez, who are subject to deportation orders, are not permitted access to many prison rehabilitative services. This claim is also meritless. Flores-Juarez has not shown that any claimed error affected his "substantial rights." *See Olano*, 507 U.S. at 734–35. Specifically, he has not demonstrated a reasonable probability of a different result had the District Court expressly recognized his limited access to rehabilitation. Accordingly, this claim also cannot survive our plain error review.

IV.

For the foregoing reasons, we will affirm the sentence imposed by the District Court.