NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0280n.06

Case No. 18-1883

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

May 29, 2019
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                    )
                                             )
    Plaintiff-Appellee,                      )
                                             )     ON APPEAL FROM THE UNITED
v.                                           )     STATES DISTRICT COURT FOR
                                             )     THE EASTERN DISTRICT OF
BERRY DWAYNE FROST,                          )     MICHIGAN
                                             )
    Defendant-Appellant.                     )


BEFORE: McKEAGUE, THAPAR, and MURPHY, Circuit Judges.

THAPAR, Circuit Judge. Berry Frost pled guilty to being a felon in possession of a firearm, and the district court sentenced him to eighty-six months in prison. Frost challenges that sentence as substantively unreasonable. We affirm.

I.

Berry Frost chose to drink a beer on a Detroit sidewalk. The problem for him was not the drinking but rather the "large L-shaped bulge" in his front-right pants pocket. R. 1, Pg. ID 3, ¶ 6. When officers drove by and noticed that bulge, they stopped, patted him down, and discovered a loaded revolver. This brings us to Frost's second problem: his lengthy felony record. And since felons may not possess firearms, the government charged Frost with being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1).

After Frost pled guilty, the probation office prepared a presentence report, which included his sentencing guideline range (seventy-seven to ninety-six months in prison). He requested a downward variance from this range because he believed he could "turn[] [his] life around," and a lengthy prison sentence would not allow him to get the help he needed. R. 28, Pg. ID 122. But the district court rejected Frost's request and sentenced him to eighty-six months in prison followed by three years of supervised release. The district court explained that this sentence would "afford appropriate deterrence" and "avoid[] unwarranted sentenc[ing] disparities." *Id.* at 127. While the district court acknowledged that it could not order Frost to seek treatment, it nonetheless hoped that Frost would "take advantage of mental health counseling opportunities, [as well as] drug and alcohol abuse . . . programming." *Id.* at 125. Frost did not object to this statement.

Frost now appeals and argues that the district court erred by inappropriately basing his prison sentence on rehabilitation. Previously, this court has noted that such errors are substantive and thus reviewed for an abuse of discretion whether or not a defendant objects. *E.g.*, *United States v. Deen*, 706 F.3d 760, 762 (6th Cir. 2013). But other judges have recognized that *Henderson v. United States*, 568 U.S. 266 (2013), "cast serious doubt" on *Deen*'s view and highlighted that all other circuits treat these errors as procedural. *United States v. Krul*, 774 F.3d 371, 381 (6th Cir. 2014) (Griffin, J., concurring in the judgment). Since *Henderson*, we have "taken inconsistent positions on whether the consideration of an impermissible factor is properly analyzed as a procedural error or a substantive error." *United States v. Duncan*, No. 18-2212, 2019 WL 1777232, at *4 n.2 (6th Cir. Apr. 23, 2019); *compare United States v. Parrish*, 915 F.3d 1043, 1047–48 (6th Cir. 2019), *with United States v. Rucker*, 874 F.3d 485, 487 (6th Cir. 2017). At some point, our court will need to reconcile our case law in this area. But because Frost loses under either standard, we need not decide which one applies in this case.

II.

The Sentencing Reform Act channels a district court's "discretion by establishing a framework to govern [its] consideration and imposition of sentences." *Tapia v. United States*, 564 U.S. 319, 325 (2011). For instance, when fashioning a prison sentence, the Act mandates that the court consider certain factors, including the "seriousness of the offense," "adequate deterrence," and "protect[ing] the public." 18 U.S.C. § 3553(a)(2). Conversely, the court *cannot* consider rehabilitation. Under the Act, "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a); *Tapia*, 564 U.S. at 335. Thus, a district court commits error if it bases the length of imprisonment on rehabilitation. *United States v. Adams*, 873 F.3d 512, 521 (6th Cir. 2017) (quoting *Krul*, 774 F.3d at 372). For example, a district court abuses its discretion when it bases the length of the defendant's sentence on his or her "need for medical care." *United States v. Gesing*, 599 F. App'x 238, 239 (6th Cir. 2015) (per curiam). Similarly, a district court abuses its discretion when it lengthens a prison sentence to give the defendant a chance to "reset" from his drug addiction. *Adams*, 873 F.3d at 523.

Frost alleges that two statements in the record demonstrate reversible error. First, the district court expressed hope that Frost would "take advantage of mental health counseling opportunities, [as well as] drug and alcohol abuse . . . programming." R. 28, Pg. ID 125. But this statement does not suggest that the district court "impose[d] or lengthen[ed]" Frost's prison sentence to promote rehabilitation. *Tapia*, 564 U.S. at 335. It merely expressed the district court's hope that Frost would take advantage of available, beneficial programs—something that the district court was allowed to do. Indeed, district courts should be encouraged to help defendants identify programs that would be beneficial to their rehabilitation. As the Supreme Court has

explained, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Id.* at 334.

The second statement, though more ambiguous, also does not demonstrate reversible error. Later in his sentencing hearing, the district court said that it was imposing a sentence "necessary . . . to give [Frost] a good, fair shot at treatment and an opportunity to volunteer to become better." R. 28, Pg. ID 127. But the district court made this statement when talking about Frost's *entire* sentence. And that entire sentence included not just imprisonment but also three years of supervised release. Though a district court cannot consider rehabilitation when imposing imprisonment, it *can* consider rehabilitation when imposing supervised release. *Krul*, 774 F.3d at 374. Thus, when a district court is discussing "an overall sentence that includes supervision as well as imprisonment," it is free to rely on rehabilitation so long as it does not "identifiabl[y]" link that goal with the term of *imprisonment*. *Id.* at 372, 374. Because the district court was talking about Frost's entire sentence and not just his imprisonment, the court's statement does not demonstrate that it imposed imprisonment for rehabilitative purposes. *Id.* at 374.

In fact, the full context shows the opposite. The district court specifically *disconnected* this statement about treatment from the imposed prison sentence. Immediately after making the statement, the district court further elaborated: "I can't order you to become better. I can't order you to rehabilitate. That's not part of the sentencing process here . . . ." R. 28, Pg. ID 127. Thus, unlike cases where district courts have improperly linked a prison sentence to rehabilitation, the district court explicitly disclaimed any connection between the prison sentence imposed and rehabilitation. *See Adams*, 873 F.3d at 523. Instead, the district court based Frost's prison sentence on permissible factors: "appropriate deterrence," "protect[ing] [the public] from further crimes,"

and "avoiding unwarranted sentenc[ing] disparities."  R. 28, Pg. ID 127; *see Adams*, 873 F.3d at 522; *United States v. Tolbert*, 668 F.3d 798, 803 (6th Cir. 2012).

We affirm.