NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0282n.06

No. 22-1965

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 16, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| SERVEO NEWELL, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: BOGGS, WHITE, and BUSH, Circuit Judges.

BOGGS, Circuit Judge. Serveo Newell was sentenced to the statutory maximum of 24 months of imprisonment for multiple violations of his supervised release. Newell appeals, arguing that the district court improperly sentenced him for purposes of rehabilitation, in violation of *Tapia v. United States*, 564 U.S. 319, 335 (2011). For the reasons set forth below, we affirm Newell's sentence as it was not improperly imposed for purposes of rehabilitation.

**Background**

In August 2020, Newell, age 21, pleaded guilty to possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). The district court sentenced him to 18 months in prison—the bottom of the sentencing guideline range—and two years of supervised release. Newell began his supervised release in May 2021. Over the next 18 months, Newell committed seven violations of the terms of his release. Of note, four months into his supervised release, Newell was in a car crash and punched the other driver in the face, which resulted in a state conviction for assault and battery and a state sentence of probation. Ten months later, in July

2022, Newell and an accomplice were caught trying to smuggle contraband into a federal prison. That contraband included two dozen cell phones, tattoo ink, cigarettes, and marijuana. Newell was also involved in a large fight at a mall and refused to cooperate with police. Newell failed to notify and later lied to his probation officer about his numerous encounters with the police. Newell also failed to seek and maintain employment. All of these actions violated the terms of his release.

The United States Probation Office filed a seven-count violation report with the court. At his violation hearing in October 2022, Newell admitted responsibility for several violations and pleaded no contest to the rest. The government noted the seriousness of the violations, which included two new crimes, Newell's unwillingness to engage with or accept the supervision of the probation department, the leniency of the sentence for the underlying offense, and his extensive criminal history, with five criminal convictions by the age of 21. The government recommended that, considering his original sentence of 18 months, he be sentenced to one year and a day, and did not recommend any term of supervised release to follow his imprisonment, given that Newell was not receptive to supervision. Defense counsel agreed with these recommendations, also noting that Newell's girlfriend was pregnant with their first child and that Newell wanted to be part of his child's life and financially provide for his family.

The court did not accept the government's recommendation, and instead sentenced Newell to two years in prison, the statutory maximum. The court did not impose any supervised release. The judge commented that he remembered his original sentencing of Newell, whose mother was murdered when he was 15 years old and his brother was sentenced to life in prison for another murder the same year. The judge stated:

> I remember [you] because I was impressed with the fact that all the trauma you had in your life, you still finished high school. And I thought . . . it took a lot of self-wanting [sic] to do so. Because . . . you grew up in an environment that was not

conducive to finishing high school, and you did. And that was, I thought, very good. And I remember telling you that at the time.

The court also referred to Newell's having been assigned the status of a "youthful trainee" in state court under Mich. Comp. Laws § 762.11, which gave him the opportunity not to have a criminal record. After Newell's state-court assault and battery conviction, Newell lost this opportunity. Further, the district court at the earlier sentencing had warned Newell of his "zero tolerance" for any future sentencing-release violations. "I gave you a break . . . but it was zero tolerance."

The court, in not accepting the government's recommended sentence, explained to Newell:

You were out there committing crimes, and you are a total danger to this community. And that's why I don't think a year and a day really is appropriate here. I think that not only do you have to be punished, but we have to keep you off the street. And hopefully, you'll change your whole outlook.

The court was particularly outraged that Newell attempted to smuggle contraband into a federal prison:

I can't believe how brazen one human being could be, to go to a [f]ederal prison and start loading into the [f]ederal prison, contraband, and serious contraband, phones and drugs. I mean, I can't even imagine that happening . . . for somebody to even consider getting away with that, it's probably one of the high, high, highest secure places around, and there you are thinking you're going to get away with it.

Later, the court again stated:

But the thing I just can't even imagine is somebody would have the mental mens rea, which means, you know, criminal intent to go to a federal prison and try to involve [sic] with the most horrible contraband in a prison, drugs, cellphones. I mean, I think it was even tattoo ink. I mean, [I] never heard of such a thing.

Applying the 18 U.S.C. § 3553(a) sentencing factors, the court stated:

I think that you absolutely deserve punishment here because everybody's tried to give you a break, including Dearborn Heights that put you on probation, and then you don't even follow the probation officer out there. The nature and circumstances of the violation . . . you haven't complied with anything, nothing. And the brazenness of you committing the crimes that you committed while you were on

supervised release, the fact that you have no communication [with your probation officers] . . . [and you only] turned yourself in after the Marshals went to your grandmother's house . . . .

The court continued:

[T]he nature and characteristics of the offenses here are horrible. I mean, you have total disregard for anything that you're supposed to do. I have to impose something that reflects the seriousness of the offenses, and I think they're very serious and they just have to stop. You've gotten a break. You've gotten on Holmes, the Dearborn probation, our probation, everything. You just don't do it. I have to give you a sentence that will deter you from -- from committing crimes and not following the rules. And I have to also protect the public. And I think that's a very important one to hear. If you're on the street, you're committing crimes .

. . .

And I think the public has to be protected. The longer I keep you incarcerated, the longer I know that nobody in the public is going to get injured by you. And also, to provide you with a needed education, vocational training and psychological training and medical care. And hopefully, you take advantage of it. Two years in prison is what you're going to get. And in two years, that gives you enough time, if you want to, to get yourself together. I think you need some counseling. But you won't get it unless you ask for it. And two years will give you plenty of time to get counseling. It will give you plenty of time to know how to segue, or to come back into society.

The court then sentenced Newell to two years in prison for his multiple violations of supervised relief. After the sentence was announced, Newell asked for some time to prepare his family financially, but the district judge refused to allow Newell to surrender at a later date.

**Discussion**

Under *Tapia v. United States*, 564 U.S. 319 (2011), a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Tapia* at 335. This applies to sentences imposed for violations of supervised release under 18 U.S.C. §3583(e)(3), just as it does to initial sentencing after conviction under 18 U.S.C. § 3582(a). *United States v. Deen*, 706 F.3d 760, 765–67 (6th Cir. 2013). However, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the

benefits of specific treatment or training programs." *Tapia,* 564 U.S. at 334. Whether a sentence violates *Tapia* is reviewed for abuse of discretion. *United States v. Rucker*, 874 F.3d 485, 487 (6th Cir. 2017). Reversal is required "only where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation." *United States v. Krul*, 774 F.3d 371, 372 (6th Cir. 2014). Reversal is not required "whenever it is merely possible that rehabilitation drove the length of imprisonment." *Id*. at 375.

Newell argues that the court improperly based the length of his sentence in part on rehabilitation when it said the two-year sentence would give Newell "enough time" to "get [himself] together," "get counseling," and "give [him] plenty of time to know how to segue, or to come back into society." Newell relies on two cases in support, *United States v. Adams*, 873 F.3d 512, 522 (6th Cir. 2017) and *United States v. Gesing*, 599 F. App'x 238 (6th Cir. 2015). In *Adams*, the district court, after an extensive discussion of the defendant's four-decade-long opioid addiction and numerous failures of treatment programs, revoked supervised release and ordered an 18-month sentence after the government explained that this length of time was required for a drug addict to successfully battle his addiction. 873 F.3d at 523. This violated *Tapia*'s prohibition against basing the length of a sentence on rehabilitation. In *Gesing*, the district court "candidly acknowledged that the most significant factor" in sentencing was Gesing's need for rehabilitative drug-abuse treatment and the court "expressly disclaimed reliance on the need for punishment or the need for protection of the public as justification" for the sentence. 599 F. App'x at 239. This also violated *Tapia*.

*Adams* and *Gesing* do not help Newell. The court sentenced Newell to two years in prison because of the number (seven) and significance (commission of two new crimes, one of a highly brazen nature) of his supervised-release violations, as well as to deter him from continuing to

commit crimes and to protect the public from Newell, who posed "a total danger to this community."  The court's statement that "hopefully" Newell would take advantage of educational, vocational, and psychological training opportunities and the medical care available to him while in prison was not a basis for the length of the sentence imposed.

There is no identifiable basis in the record for concluding that the court based the length of Newell's sentence, even in part, on rehabilitation and thus did not violate *Tapia*.  The court did not abuse its discretion in expressing hope that Newell, "if he wanted it," would "ask for" and "get counseling" during his two-years in prison.

For the reasons above, the judgment in this case is **AFFIRMED**.