NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0011n.06

No. 23-5085

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 08, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) ) | |
| JERTERRIUS AKRIDGE | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

---

Before: WHITE, THAPAR, and BLOOMEKATZ, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Jerterrius Akridge appeals his fifty-four-month sentence imposed after he pleaded guilty to one count of possession of a firearm as a convicted felon. He argues that his sentence is substantively unreasonable and is impermissibly based on a rehabilitative purpose. We AFFIRM.

**I.**

In the early morning of March 23, 2021, patrol officers from the Chattanooga Police Department responded to a report of a man, later identified as Akridge, with a firearm at a Volkswagen facility. Managers of the facility reported that, although Akridge was not threatening anyone, they nonetheless wanted him removed from the property. The officers found Akridge in possession of a semiautomatic pistol, which they secured, apparently without incident. Three days later, the investigator assigned to the case learned that Akridge had prior felony convictions. She secured a warrant for Akridge's arrest and arranged for him to be taken into custody the following

month at the Tennessee probation and parole office. Akridge was indicted on one count of possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Akridge notified the district court and the government that he intended to plead guilty. But at his change-of-plea hearing on July 21, 2022, Akridge evinced difficulty understanding what was happening. Throughout the court's plea colloquy, he expressed confusion at questions asking, for example, whether he was a U.S. citizen ("What is that?" R. 41, PID 330), understood of which offense he was admitting guilt ("Is it the firearm?" *Id.* at PID 332), received a copy of the indictment ("What is the indictment?" *Id.* at PID 335), and was advised by counsel of the nature and meaning of the charge against him ("What does that mean?" *Id.* at PID 336) and of potential defenses to the charge ("Defenses? What does that mean?" *Id.* at PID 339). At multiple points, often at the court's insistence, counsel conferred with Akridge to ensure his comprehension. In the end, the court did not "feel comfortable accepting his guilty plea" at the July 21 hearing, *id.* at PID 350, and believed that "he might need a little bit more time to go through this so that he understands or at least that the Court . . . is better satisfied that he understands," *id.* at PID 349. The court continued the hearing until August 3, 2022. Akridge did not evince the same confusion at that hearing, and the court accepted his guilty plea.

Akridge's sentencing hearing took place on January 25, 2023. The court calculated Akridge's sentencing guidelines range using a total offense level of seventeen and a criminal-history category of VI, resulting in a sentencing range of fifty-one to sixty-three months' imprisonment. The parties agreed with the court's calculation. The court then heard argument regarding the 18 U.S.C. § 3553(a) sentencing factors.

The government contended that a sentence "at or near the top of the guideline range," such as sixty months, would be appropriate. R. 43, PID 381. It stated that "hundreds of residents of

2

this community work[ed]" at the Volkswagen facility where Akridge possessed the firearm and that Akridge "told law enforcement that he intended to sell" the firearm, "thus furthering the illegal firearms trade in this community." *Id.* at PID 382. The government also noted that Akridge "ha[d] amassed [thirty-four] criminal history points at [twenty-eight] years of age." *Id.* Akridge had several prior convictions for theft and three convictions for the unlawful possession or use of firearms—including one offense in which he discharged a firearm in a large crowd of people— and he had evaded law enforcement and violated probation on multiple occasions. Thus, the government argued, Akridge "ha[d] no respect for the law," *id.* at PID 382, and "there is a need to protect the public from" his conduct, *id.* at PID 384.

Akridge's counsel argued that although criminal-history category VI was technically correct for guidelines-calculation purposes, the court should nonetheless sentence Akridge using a guidelines range based on category V. Counsel contended that "Akridge's criminal history score grossly overstates the severity of his criminal history," noting that if he "were given just one point for his misdemeanor convictions, he would have [eleven] criminal history points in total," and that "the nature of his convictions—. . . the majority of which are . . . misdemeanors—[do not] merit him being in criminal history category VI." *Id.* at PID 384–85. Further, Akridge "was receiving mental health treatment for both schizoaffective disorder and PTSD," had been previously hospitalized for suicidality, and suffered from Tourette Syndrome and "a high degree of paranoia." *Id.* at PID 385–87. Counsel argued that paranoia, not a desire to threaten or harm employees, drove Akridge to bring the firearm to the Volkswagen facility. And counsel noted that Akridge "was on disability as a child," graduated high school with a special-education degree, and "struggle[d] with significant literacy issues," which, coupled with his Tourette Syndrome, impeded his employment opportunities. *Id.* at PID 386–87.

3

Akridge followed his counsel's argument with a lengthy statement of his own. He explained that his prior theft offenses occurred "a long time" ago, when he was young, and that he had "struggled coming up" and "get[ting] a job." *Id.* at PID 388. He disputed the government's characterization of one of his prior firearms offenses, stating that he "did not fire in a crowd of people" but rather "shot in the air" and "never shot" or "hurt" anyone. *Id.* at PID 389. He attributed some probation violations to his inability to "read or write," *id.* at PID 391, and his failure to pay probation fines to his finances, noting that he could not even "come up on money to be able to afford food," *id.* at PID 395. He further noted his faith and participation in his church's choir as well as his PTSD and thoughts of suicide. He acknowledged that he had "made some mistakes in [his] past," *id.* at PID 389, and that his "past [had] just caught up with [him]," *id.* at PID 393, but noted that he has tried to "accept[] responsibility" for his conduct, *id.* at PID 389. He conceded that a prison term of thirty to thirty-seven months might be appropriate but stated that "[fifty] months, [sixty] months, that's too long." *Id.* at PID 393.[1] He "miss[ed] [his] family" and was "ready to go home." R. 43, PID 396.

After confirming that Akridge's counsel and the government had nothing further to add, the court stated that it "ha[d] considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory guideline range, as well as the other factors listed in" 18 U.S.C. § 3553(a), and sentenced Akridge to a prison term of fifty-four months. *Id.* at PID 396–97. The court recommended that Akridge receive medical and mental-health treatment while incarcerated and specified conditions for his supervised release. The court asked whether

---

[1] The United States Probation Office originally calculated Akridge's sentencing-guidelines range as thirty to thirty-seven months but later revised the range to fifty-one to sixty-three months based on the government's objection.

"either party ha[d] any objections to the sentence just pronounced by the Court that ha[d] not been previously raised"; neither did. *Id.* at PID 399–400. The court then addressed Akridge directly:

> Mr. Akridge, to some degree, you're absolutely correct when—in your statement that you said that your past had caught up with you a little bit.
>
> [Thirty-four] criminal history points is an enormous amount. I was fully prepared to give you a longer sentence, but I believe [fifty-four] months, which is a sentence inside that criminal history category V that your counsel asked for, is more than enough to protect the public from further crime from you but allow you some time in the Bureau of Prisons to get your life straightened out.

*Id.* at PID 400.

The court expressed its "hope" that Akridge "avail [him]self of some of the programs that are available to" him and wished him luck. *Id.* at PID 401. It asked whether there were "any other matters to resolve in this case"; the parties said no, and the court concluded the hearing. *Id.*

**II.**

"On appeal, district court sentencing determinations are reviewed for reasonableness. The reasonableness inquiry has two components: procedural and substantive." *United States v. Gates*, 48 F.4th 463, 468–69 (6th Cir. 2022) (citation omitted). A claim of procedural unreasonableness "goes 'more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning under § 3553(a)).'" *United States v. Cabrera*, 811 F.3d 801, 808–09 (6th Cir. 2016) (quoting *United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007)). "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We review a challenge to the substantive reasonableness of a sentence under an abuse-of-discretion standard. *See United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). Our review asks whether "the court placed too much weight on some . . . factors and too little on others in

sentencing the individual." *Rayyan*, 885 F.3d at 442. Because sentencing "is a matter of reasoned discretion, not math," *id.*, "[w]e give considerable deference to a district court's decision about the appropriate length, and we treat a within-[g]uidelines sentence, like the one [Akridge] received, as presumptively reasonable," *United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019). We grant relief only when we are left with "a 'definite and firm conviction' that the district court erred by not imposing a lower sentence." *United States v. Johns*, 65 F.4th 891, 894 (6th Cir. 2023) (quoting *United States v. Hymes*, 19 F.4th 928, 933 (6th Cir. 2021)).

**III.**

**A.**

Akridge first argues that his within-guidelines sentence is substantively unreasonable because the district court did not adequately consider his personal circumstances, including his challenging childhood and mental-health diagnoses, and that his criminal-history score overrepresents the seriousness of his criminal record.

To start, we observe that the district court said little about the bases for Akridge's sentence. Although it clearly was engaged and in dialogue with counsel and Akridge during the sentencing proceeding, the court provided scant explanation for its sentence of fifty-four months' imprisonment. And without some articulation of the court's rationale, we cannot easily assess how it weighed the § 3553 factors or accounted for Akridge's sentencing arguments highlighting his challenging childhood and mental-health issues. *See United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). Still, Akridge does not challenge the adequacy of the district court's explanation for his sentence—a procedural reasonableness challenge—so "we limit our review to whether the sentence was substantively reasonable," *United States v. Sexton*, 889 F.3d 262, 265 (6th Cir. 2018). However, we reiterate the need for district courts "to explain to the parties and

the reviewing court [their] reasons for imposing a particular sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). When viewed in total, a transcript must satisfy us that the district court considered the parties' arguments on the § 3553(a) factors and expressed a reasoned basis for exercising its own legal decision-making authority in sentencing the defendant. *See United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In undertaking that limited review, we conclude that Akridge's sentence is substantively reasonable. The district court said that Akridge was "absolutely correct" in acknowledging that his "past had caught up with" him and suggested that he "avail [him]self of some of the programs that are available to" him in prison, R. 43, PID 400–01, indicating that the court indeed considered his personal circumstances. Further, Akridge had multiple prior convictions for firearms offenses, including one in which he fired a weapon in a crowd of people, as well as numerous convictions for theft. A district court may appropriately choose to emphasize one § 3553(a) factor over others if the facts of the case call for it. *See United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012). And the district court here could reasonably conclude that this criminal history justified Akridge's within-guidelines fifty-four-month sentence despite his challenging childhood and mental-health issues. *See, e.g.*, *United States v. Kerns*, 9 F.4th 342, 347 (6th Cir. 2021) (affirming a within-guidelines sentence for kidnapping and possession of a firearm in furtherance of a crime of violence given that the court considered the defendant's mental-health issues and concluded nonetheless that the seriousness of the offense and the need to protect the public justified a sentence at the top of the guidelines range).

**B.**

Akridge next argues that the district court improperly based his sentence on rehabilitative concerns. In *Tapia v. United States*, 564 U.S. 319 (2011), the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id.* at 335. The Court reached this conclusion in resolving the interplay between two provisions of the Sentencing Reform Act of 1984: 18 U.S.C. § 3553(a), which lists the factors—including rehabilitation—a district court must consider when imposing a sentence generally, and 18 U.S.C. § 3582(a), which identifies the factors the court must consider when imposing imprisonment in particular and requires that the court "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 3582(a); *see Tapia*, 564 U.S. at 325–26, 328–29; *United States v. Adams*, 873 F.3d 512, 521 (6th Cir. 2017).

"But this does not mean that a court cannot discuss rehabilitation at all." *United States v. Bailey*, 27 F.4th 1210, 1215 (6th Cir. 2022). "A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 564 U.S. at 334. Nor does a court err if it "urge[s] the [Bureau of Prisons] to place an offender in a prison treatment program." *Id.* "But the court's discussion of those things must not be its explanation for the sentence it imposes. Instead, to comply with § 3582(a), the court must set forth a rationale independent of rehabilitative concerns." *United States v. Rucker*, 874 F.3d 485, 488 (6th Cir. 2017). "[O]nly where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation" does the sentence fail to pass muster. *United States v. Krul*, 774 F.3d 371, 372 (6th Cir. 2014).

Akridge contends that the district court expressly disavowed protecting the public as a sufficient factor and impermissibly relied on a rehabilitative purpose when it stated:

> I believe [fifty-four] months, which is a sentence inside that criminal history category V that your counsel asked for, is more than enough to protect the public from further crime from you but allow you some time in the Bureau of Prisons to get your life straightened out.

R. 43, PID 400.

We must review the court's statement in context, however. The court began its statement observing that it entered the sentencing hearing intending to impose a longer sentence based on Akridge's significant criminal history. The court then said, nonetheless, that the fifty-four-month sentence it was imposing is "more than enough" to satisfy the concerns that drove the court to gravitate to a longer sentence—protecting the community from further crime. But this remark says nothing about the other § 3553(a) factors. To be sure, a more fulsome explanation would have made clearer that the court was relying on permissible § 3553(a) factors in choosing Akridge's sentence. But it appears on the record as a whole that the court's statement that the sentence would "allow" Akridge to "straighten out" his life was merely an observation that his "term of imprisonment will provide an opportunity to" participate in rehabilitative programming, not that the court "calculated the length of [his] sentence to ensure that [he] receive certain rehabilitative services," *Krul*, 774 F.3d at 376 (quoting *Tapia*, 564 U.S. at 334–35). The record also indicates that the fifty-four-month sentence reflected the court's view of Akridge's criminal history and, specifically, that it adopted his counsel's argument that his prior crimes were collectively better characterized as category V rather than VI. *See* R. 43, PID 400 (explaining that fifty-four months is "a sentence inside that criminal history category V that your counsel asked for").

The district court's statements here, therefore, are unlike those in other cases where we have concluded that, in context, the district court lengthened a sentence for rehabilitative purposes.

This case is unlike *United States v. Gesing*, 599 F. App'x 238 (6th Cir. 2015), on which Akridge primarily relies. There, we held that a sentence ran afoul of *Tapia* because the district court not only expressly agreed that the length of the sentence imposed was unnecessary to protect the public or punish the defendant but also "candidly acknowledged that the most significant factor was [the defendant's] need for medical care." *Id.* at 239. Nor can we say from context in the record that Akridge's sentence was targeted to achieve a particular rehabilitative goal, as in *Adams*, where the court apparently selected a sentence length based on the amount of time the government claimed was needed for a "drug addict to successfully battle his addiction," 873 F.3d at 523. No such purpose is apparent here.

**IV.**

For the reasons stated, we AFFIRM.