RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERNEST LARRY ADAMS,

*Defendant-Appellant.*

No. 16-2786

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cr-20224-5—Gerald E. Rosen, District Judge.

Decided and Filed: October 11, 2017

Before: MOORE, WHITE, and DONALD, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Colleen P. Fitzharris, Brandy Y. Robinson, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Wayne F. Pratt, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Ernest Adams is a seventy-one-year-old opiate addict with an extensive criminal history; most of his convictions stem from his substance-abuse problems. While on supervised release, Adams tested positive for opiates on numerous occasions and subsequently pleaded guilty to violating a condition of his supervised release. The district court then revoked his supervised release and imposed a below-Guidelines

sentence of eighteen months' imprisonment. On appeal, Adams argues that the district court abused its discretion by imposing a procedurally and substantively unreasonable sentence.

We hold that the district court's sentencing decision was procedurally unreasonable because the court violated Adams's due-process right when it based his sentence upon unreliable information about rehabilitation. We further hold that the sentence was substantively unreasonable because the district court violated *Tapia v. United States*, 564 U.S. 319 (2011), when it considered rehabilitation as a factor when calculating the length of the period of incarceration. We therefore **VACATE** the defendant's sentence and **REMAND** for resentencing.

## I. BACKGROUND

Adams is seventy-one and has been addicted to opiates for the last thirty-five to forty years. R. 411 (Supervised-Release Violation Hr'g ("Hr'g") at 20) (Page ID #2818). He has an extensive criminal history—approximately twenty convictions and numerous other contacts with the criminal justice system—and these crimes were all closely linked with Adams's addiction. *Id.* at 20, 22 (Page ID #2818, 2820).

In 2011, Adams pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). R. 275 (Judgment at 1) (Page ID #2247). He was sentenced to sixty months' imprisonment and a term of three years of supervised release. *Id.* at 2–3 (Page ID #2248–49). After serving his custodial sentence, Adams began his term of supervised release in July 2015. R. 395 (Supervision Report at 2) (Page ID #2771); R. 411 (Hr'g at 12) (Page ID #2810). Starting in October 2015, Adams repeatedly tested positive for opiates. R. 411 (Hr'g at 12–13) (Page ID #2810–11). In response, the U.S. Probation Office placed Adams in multiple drug-treatment programs. *Id.* at 13–14 (Page ID #2811–12). These programs did not succeed, and he continued to abuse unlawful substances. *Id.* at 14 (Page ID #2812).

After Adams tested positive for opiates three times between October 24, 2016 and November 15, 2016, the Probation Office filed another violation report with the district court. R. 404 (Violation Report at 2) (Page ID #2788). Following Adams's failure of yet another drug

test on November 30, 2016, the Probation Office filed an amended violation report.  R. 407 (Violation Report at 2) (Page ID #2793).

At his hearing in December 2016, Adams admitted guilt to the violation of a condition of his supervised release—namely that he had unlawfully used controlled substances.  R. 411 (Hr'g at 4) (Page ID #2802); R. 408 (Judgment at 1) (Page ID #2795).  The Guidelines range for the violation was for a term of incarceration between twenty-one and twenty-seven months.  R. 411 (Hr'g at 4) (Page ID #2802).  After extensive discussion of Adams's substance-abuse problems and the failure of numerous treatment programs to end his addiction, the district court revoked Adams's supervised release and sentenced him to a period of incarceration of eighteen months with no period of supervision to follow.  *Id.* at 22–23 (Page ID #2820–21); R. 408 (Judgment at 2) (Page ID #2796).  Adams then timely filed this appeal.  R. 409 (Notice of Appeal) (Page ID #2797).

## II.  DISCUSSION

### A.  Standard of Review

We review sentences imposed for violations of supervised release "'under a deferential abuse of discretion standard' for reasonableness."  *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007) (quoting *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007)).  Reasonableness is comprised of both procedural and substantive reasonableness; we review both for abuse of discretion.[1]  *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009).

We first review the procedural reasonableness of the district court's sentencing decision.  *Bolds*, 511 F.3d at 581.  In order for a sentence to be procedurally reasonable, the district court must have:

---

[1]"'[I]f a sentencing judge asks . . . whether there are any objections not previously raised, in compliance with the procedural rule set forth in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)[,] and if the relevant party does not object, then plain-error review applies on appeal' to those procedural-reasonableness arguments that were not preserved in the district court."  *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011) (alteration in the original) (quoting *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008)).  If the district court did not properly ask the *Bostic* question, as happened in this case, then a defendant's procedural objections will instead be reviewed for abuse of discretion.  *Id.*

(1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*Id.* Furthermore, a district court "necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts . . . .'" *Id.* at 579 (first and second alteration in the original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Once we review the district court's sentence for procedural reasonableness, we then review for substantive reasonableness. *Id.* at 581. "[W]e must 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *Id.* (quoting *Gall*, 552 U.S. at 51). The abuse-of-discretion standard is deferential: Even if we "might have reasonably concluded that a different sentence was appropriate[, this] is insufficient to justify reversal of the district court." *Id.* (quoting *Gall*, 552 U.S. at 51). Furthermore, a "sentence within the applicable Guidelines range is accorded a presumption of [substantive] reasonableness." *United States v. Henry*, 545 F.3d 367, 385 (6th Cir. 2008).

**B. Procedural Unreasonableness**

One situation in which a district court abuses its discretion and imposes a procedurally unreasonable sentence is when it bases the sentence on "clearly erroneous facts." *Gall*, 552 U.S. at 51; *Bolds*, 511 F.3d at 579. This is because "a violation of due process exists when a sentencing judge relies upon erroneous information." *United States v. Wilson*, 614 F.3d 219, 225 (6th Cir. 2010) (quoting *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005)); *accord United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988). "[T]he defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence" in order to prove a due-process violation. *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990); *United States v. Jones*, 40 F. App'x 15, 17 (6th Cir. 2002).

If the evidence is false or unreliable, then the district court abused its discretion only if it based the defendant's sentence on that erroneous information. To determine whether a court relied upon erroneous information, an appellate court "should analyze whether 'the sentence . . . might have been different [in the absence of that information].'" *Wilson*, 614 F.3d at 224 n.3 (alteration in the original) (quoting *Tucker*, 404 U.S. at 448). "[T]o do so, courts must look to the sentencing decision with an eye for whether the information in question appears to have been 'an important factor in determining [the] sentence.'" *Id.* (second alteration in the original) (quoting *United States v. González-Castillo*, 562 F.3d 80, 81 (1st Cir. 2009)); *see also United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012).

Adams argues that his due-process right was violated, and thus his sentence is procedurally unreasonable, because the district court based his sentence on three false propositions:

(1)  That long-term heroin addicts need eighteen months for their brain chemistry to "reset" in order for future treatment to be effective;

(2)  That Mr. Adams would have access to the Bureau of Prison[s'] Residential Drug Treatment Program ("RDAP"); and

(3)  That the Sentencing Commission's study of recidivism was limited to violent offenders, and therefore its findings were inapplicable to offenders, like Mr. Adams, who suffer drug abuse disorder.

Appellant's Br. at 12.

In response, the government first argues that a defendant does not have a due-process right "to be sentenced based on accurate information . . . beyond the facts of the defendant's own actions and criminal record." Appellee's Br. at 14. The government's argument fails. The due-process right to be sentenced based on accurate information is not limited to information solely about the defendant's actions and criminal history. We have, for example, reviewed district courts' use of scientific studies as a basis for sentencing to determine if this caused reliance on erroneous facts. *See, e.g.*, *Cunningham*, 669 F.3d at 730 (analyzing a defendant's argument that the sentencing court relied upon erroneous recidivism-rate studies in determining the sentence); *United States v. Burnette*, 414 F. App'x 795, 799–801 (6th Cir. 2011) (discussing whether it was

procedurally unreasonable for a district court to consider a scientific study that was potentially erroneous in its sentencing decision).

Therefore, the relevant inquiry in determining whether Adams's sentence was procedurally unreasonable is:  (1) whether the three contested propositions are materially false or unreliable; and (2) whether they were "important factors" in calculating Adams's sentence, such that his sentence may have been different in their absence.  After reviewing the record, we conclude that the latter two contested premises were not relied upon, and therefore pose no problem.  The first proposition—the purported need for an eighteen-month "reset"—is problematic, however.  Accordingly, we will address the contested premises in reverse order.

### 1.  Relevance of the U.S. Sentencing Commission's 2016 Recidivism Study

Adams argues that the sentencing court incorrectly disregarded new data about recidivism rates because it mistakenly believed that the study looked only at violent offenders.  Appellant's Br. at 19.  Adams is correct that a recent study by the U.S. Sentencing Commission found that recidivism rates for offenders over the age of sixty—both violent and non-violent—are the lowest among all age groups.  U.S. SENTENCING COMM'N, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW 10, 23 (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.  However, the district court was clearly focused on Adams's own pattern of recurring crime and his repeated contacts with the criminal justice system and not a generally applicable study.  *See, e.g.*, R. 411 (Hr'g at 8) (Page ID #2806); *id.* at 22 (Page ID #2820).  Thus, even though the district court was incorrect about the applicability of that study to Adams, this mistake was not an "important factor" in calculating the defendant's sentence.

### 2.  Eligibility for the Bureau of Prisons' Residential Drug Abuse Program

Adams also contends that the court "relied on the false belief that Mr. Adams would have access to the [Residential Drug Abuse Program ("RDAP")] during his eighteen months in

prison."**[2]** Appellant's Br. at 18. The record, however, does not provide clear support for Adams's argument that the district court was confused about the requirements for RDAP eligibility. Furthermore, even assuming the court was mistaken, the record does not buttress Adams's assertion that the district court relied upon this false belief. Although the district court did frequently refer to the availability of drug treatment programs in federal prison, access to RDAP specifically was not an "important factor" in the determination of Adams's sentence. *See* R. 408 (Judgment at 2) (Page ID #2796) (requiring simply that "[t]he defendant participate in drug treatment," without specifying RDAP).

### 3. Assertion About the Eighteen Months' "Reset" Period

During the supervised-release violation hearing, the United States claimed that there was evidence that drug-treatment programs less than a year in length are ineffective because the brain of an addicted person requires at least eighteen months without abusing drugs to "reset." R. 411 (Hr'g at 19–20) (Page ID #2817–18). This information is unreliable because it is an unsubstantiated assertion that has the veneer of accuracy due to its supposed status as a product of scientific research.**[3]** After hearing this claim from the government, the district court subsequently imposed an eighteen-month sentence of imprisonment upon Adams. R. 411 (Hr'g at 22) (Page ID #2820). The district court then explained—in response to Adams's question about the length of the period of incarceration—that it had chosen that length "because you need that long to *reset* and maybe get another, maybe get another chance at remaining clean and sober." *Id.* at 23 (Page ID #2821) (emphasis added). The district court, therefore, violated Adams's due-process right when it incorporated this unreliable information in its sentencing decision, and thus this sentence is procedurally unreasonable.

---

**[2]**Both parties agree that the eighteen-month sentence imposed upon Adams is of insufficient length to render him eligible for RDAP. Appellant's Br. at 18; Appellee's Br. at 6; *see also* FED. BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, P5330.11, PSYCHOLOGY TREATMENT PROGRAMS 2.8–2.9 (2009), https://www.bop.gov/policy/progstat/5330_011.pdf.

**[3]**The government did not cite a specific study or provide support for this assertion either during the hearing or in its appellate brief.

## C. Substantive Unreasonableness

When reviewing a sentence's reasonableness, we typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless the sentence is "procedurally sound." *Bolds*, 511 F.3d at 581 (citing *Gall*, 552 U.S. at 51). The determination of what falls in the procedural versus substantive prong of this analysis, however, "is not fully settled within our Circuit." *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) (quoting *United States v. Cabrera*, 811 F.3d 801, 808–09 (6th Cir. 2016)). Although some of our sister circuits have treated a district court's impermissible consideration of rehabilitation to impose or lengthen a custodial sentence as a procedural error, *see, e.g., United States v. Holdsworth*, 830 F.3d 779, 783–85 (8th Cir. 2016); *United States v. Vandergrift*, 754 F.3d 1303, 1309–10 (11th Cir. 2014), we have treated such error as substantive. *See United States v. Walker*, 649 F.3d 511, 513–514 (6th Cir. 2011). In this case, the facts underlying the sentence's procedural and substantive unreasonableness are the same and thus the analyses of both prongs of reasonableness are entangled; therefore, we will now turn to address the substantive unreasonableness of Adams's sentence. *See United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007) ("Although we have noted that the border between factors properly considered 'substantive' and those properly considered 'procedural' is blurry if not porous, our post-*Booker* jurisprudence requires us to consider each of these factors in determining whether a sentence is reasonable." (internal citation omitted)).

As discussed above, we review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Bolds*, 511 F.3d at 575. "[W]e have applied a 'rebuttable presumption of [substantive] reasonableness' to sentences falling within the applicable Guidelines range." *Liou*, 491 F.3d at 337 (quoting *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)); *Cabrera*, 811 F.3d at 808. This presumption "is not binding. It does not, like a trial-related evidentiary presumption, insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case." *Rita v. United States*, 551 U.S. 338, 347 (2007). Thus, the presumption does not "reflect strong judicial deference of the kind that leads appeals courts to grant greater factfinding leeway to an expert agency than to a district judge." *Id.* Instead, "the presumption reflects the fact that, by the time an appeals court is considering a

within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Id.* This "double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* We have also applied this rebuttable presumption to sentences, like the one in this case, that are below the Guidelines range. *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Adams argues that the district court imposed a substantively unreasonable sentence because it both chose to impose a sentence of imprisonment and extended the length of that sentence for the purposes of rehabilitating him. Appellant's Br. at 22. In *Tapia v. United States*, 564 U.S. 319, 335 (2011), the Supreme Court held that a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." The Supreme Court reached this conclusion after analyzing the statutory interplay between 18 U.S.C. § 3553(a), which lists rehabilitation as a factor to be considered in imposing a sentence, and 18 U.S.C. § 3582(a), which states that:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added). In clarifying the application of the prohibition in 18 U.S.C. § 3582(a) on considering correction and rehabilitation to both the decision to impose a term of imprisonment and the calculation of that term's length, the Supreme Court resolved a circuit split on the issue. *Tapia*, 564 U.S. at 323. We have subsequently applied *Tapia*'s holding to sentencing decisions imposing periods of incarceration upon the revocation of supervised release. *United States v. Deen*, 706 F.3d 760, 765–67 (6th Cir. 2013).

In *United States v. Krul*, 774 F.3d 371, 372 (6th Cir. 2014), we interpreted *Tapia* to "require[] reversal only where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation." We then held that the record in *Krul* did not contain such evidence because, although the district court had stated that the length of the term of imprisonment would enable the defendant to access drug treatment,

there was no indication that the court calculated the length of the sentence specifically to ensure that the defendant receive such rehabilitation. *Id.* at 376.

The issue of whether the district court violated *Tapia* here can be framed as whether this case is more analogous to *Krul* or to our decision in *United States v. Gesing*, 599 F. App'x 238 (6th Cir. 2015). In *Gesing*, we held that the sentencing court violated *Tapia* and *Krul* when it stated that the defendant's two-year sentence was not motivated by the need to protect the public, but rather was intended to address the defendant's need for medical care. *Id.* at 239. We observed that the district court "candidly acknowledged that the most significant factor was Gesing's need for medical care." *Id.* We then concluded "that the district court's 'hope' for rehabilitation played a determinative role in the length of the prison term imposed." *Id.* Thus, in *Gesing* there was an "identifiable basis" in the record showing that the sentencing court impermissibly imposed a sentence for the purpose of rehabilitation that did not exist in *Krul*.[4]

In the case at bar, the transcript of the supervised-release violation hearing contains sufficient evidence to rebut the presumption of reasonableness applied to a below-Guidelines sentence and to conclude that the district judge impermissibly calculated the *length* of the sentence of imprisonment to promote Adams's rehabilitation. There is no "identifiable basis" showing that the district court improperly used rehabilitation as a factor when deciding to *impose* a term of imprisonment, as Adams argues, but a violation of *Tapia* occurs if a sentence is either imposed *or* lengthened.

### 1. The Choice to Impose Any Sentence of Imprisonment

The actual imposition of a term of imprisonment on Adams was motivated by the permissible goals of retribution, deterrence, and incapacitation. *See Tapia*, 564 U.S. at 327 ("So a court making these decisions [to impose a term of imprisonment and calculating its length]

---

**4**Another factual difference between *Gesing* and *Krul* that distinguishes the two cases is that the sentence imposed upon the defendant in *Krul* included a term of supervised release, whereas the sentence imposed on the *Gesing* defendant did not. *Compare Krul*, 774 F.3d at 374, *with Gesing*, 599 App'x at 238. *Tapia*'s prohibition on considering rehabilitation does not apply to the imposition of punishments other than imprisonment. *Krul*, 774 F.3d at 374. Thus, in *Krul*, we held that some of the statements made by the judge about rehabilitation related to the supervised-release part of the sentence and not the custodial sentence. *Id.* As Adams was sentenced only to a period of incarceration, there was no portion of his sentence for which it was permissible for the judge to consider rehabilitation, unlike in *Krul*.

should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term."); 18 U.S.C. §§ 3553(a), 3582(a).

The sentencing court extensively discussed the need to prevent Adams from committing future crimes and to protect society from him. *See, e.g.*, R. 411 (Hr'g at 10–11) (Page ID #2808–09); *id.* at 22 (Page ID #2820). "[P]rotect[ing] the public from further crimes of the defendant" is one of the factors a court should consider when deciding whether to impose a sentence. 18 U.S.C. § 3553(a)(2)(C). Furthermore, the district court noted Adams's extensive criminal history and discussed his recidivism as well as his age. *See, e.g.*, R. 411 (Hr'g at 22) (Page ID #2820). "[T]he history and characteristics of the defendant" is another factor the sentencing court must consider. 18 U.S.C. § 3553(a)(1).

The only comment the district court made that may indicate a *Tapia* violation in the decision to impose a sentence of imprisonment occurred when the court stated: "This is not a punishment, per se. It is a recognition that there is just nothing left for us, unfortunately." R. 411 (Hr'g at 23) (Page ID #2821). This statement is ambiguous. However, given the extensive discussion of permissible factors prior to the district court making this statement and the presumption of reasonableness we apply in our substantive reasonableness analysis, it is not a sufficient "identifiable basis" for concluding that the district court chose to impose a sentence in part because of rehabilitation. Moreover, the district court's explicit rejection of the defense's position that no sentence of imprisonment should be imposed demonstrates that the court, irrespective of Adams's substance abuse, was not prepared to ignore his history of noncompliance with his supervised-release conditions. *Id.* at 12 (Page ID #2810). Thus, the court's decision to impose a custodial sentence itself did not violate *Tapia* and *Krul*.

## 2. The Calculation of the Length of the Custodial Sentence

There is, however, "an identifiable basis for concluding that the district court based the *length* of the sentence of incarceration in part on rehabilitation."[5] *Krul*, 774 F.3d at 372

---

[5]The district court did acknowledge that calculating the length of a sentence in order to qualify a defendant for a drug-treatment program was impermissible and disavowed that purpose in choosing Adams's sentence. R. 411 (Hr'g at 18–19) (Page ID #2816–17) ("[A] [c]ourt should not consider the necessary time in prison so that a defendant could receive RDAP as a factor in the sentence. That's not what I'm doing here."). Although the district

(emphasis added). Throughout the hearing, the district court discussed the seriousness of Adams's drug addiction and his need for supervision. *See, e.g.*, R. 411 (Hr'g at 8) (Page ID #2806); *id.* at 16 ( Page ID #2814). The clearest evidence that the court impermissibly calculated the length of the custodial sentence is its reliance on the government's assertion about the need for an eighteen-month "reset," as discussed above in our analysis of the procedural reasonableness of this sentence. The district court chose to impose an eighteen-month term of incarceration after hearing the United States say that this length of time was required for a drug addict to successfully battle his addiction. Furthermore, in response to Adams's question about his sentence's length, the court stated: "Well, it's extensive because you need that long to *reset* and maybe get another, maybe get another chance at remaining clean and sober." R. 411 (Hr'g at 23) (Page ID #2821) (emphasis added). Thus, the district court calculated the length of Adams's sentence based on the purported length of time needed to rehabilitate an individual with substance-abuse problems.

*Tapia*, in its interpretation of 18 U.S.C. § 3582(a), prohibits not only the imposition or lengthening of a prison sentence to qualify a defendant for a drug-treatment program but also "otherwise to promote rehabilitation." *Tapia*, 564 U.S. at 335. Therefore, the district court's consideration of general rehabilitative goals when calculating Adams's sentence is a violation of *Tapia*, making the resulting sentence substantively unreasonable.

### III. CONCLUSION

We hold that this sentence is both procedurally and substantively unreasonable. It is procedurally unreasonable because the district court violated Adams's due-process right when it relied on unreliable claims about the minimum amount of time needed to rehabilitate a drug addict. The sentence is substantively unreasonable because the district court is prohibited from considering rehabilitation as a factor in either deciding to impose a period of incarceration or determining the length of such a period of incarceration. In other words, it was procedurally and

---

court explicitly stated that it did not calculate the length of the sentence such that Adams could qualify for RDAP *specifically*, the record clearly indicates that the court did consider Adams's rehabilitation *generally* when calculating the length of the confinement. As *Tapia* and 18 U.S.C. § 3582(a) prohibit the use of general rehabilitative goals as a factor in considering the imposition or length of a term of imprisonment, the district court's narrow focus on avoiding only the consideration of Adams's eligibility for RDAP was mistakenly circumscribed.

substantively unreasonable for the district court to calculate Adams's sentence by relying on a faulty premise about rehabilitation, which was a consideration it should never have incorporated into its decisionmaking process in the first place. The district court, therefore, abused its discretion in imposing this sentence for violation of supervised release.

Consequently, we **VACATE** Adams's sentence for his supervised-release violation and **REMAND** for resentencing in accordance with 18 U.S.C. § 3553(a) and 18 U.S.C. § 3582(a).