**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0478n.06

**No. 19-4243**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 13, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| MELVIN ENRIQUEZ RIOS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:     BOGGS, SUTTON, and WHITE, Circuit Judges

**BOGGS, Circuit Judge.**  Defendant Melvin Rios appeals his eighteen-month sentence for transportation of aliens not lawfully present in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  On appeal, Rios argues that the length of his prison sentence is procedurally unreasonable.  He claims that the district court relied on an erroneous fact in imposing his within-Guidelines sentence, because the court made a statement during sentencing that Rios's sentence was similar to those imposed by the sentencing judge in comparable cases.  For the following reasons, we affirm Rios's sentence.

## I.  BACKGROUND

### A.  Factual Background

Rios was apprehended by the Ohio State Highway Patrol during a traffic stop in Wood County, Ohio on July 15, 2019.  He was traveling in a car along with seven other non-English speaking individuals who had no identification or personal belongings with them, and all of whom

were subsequently detained on suspicion of human smuggling. Although Rios was not driving at the time of the traffic stop, the investigation by the U.S. Border Patrol determined that he was the driver of the car until he requested one of the passengers to replace him temporarily so that Rios could rest. Rios told the U.S. Border Patrol agents that he most recently entered the United States illegally in August 2014 in Texas. When looking for work outside of Home Depot in Texas, he was approached by an individual who offered to pay Rios $100 for each person that he would transport to Chicago, Illinois and Laurel, Maryland. Rios was instructed to pick up a sports utility vehicle with eight passengers from a gas station in McAllen, Texas and was given money for travel expenses. By the time he was stopped by state troopers in Ohio, he had already dropped off one person in Chicago and still had $1,000 in cash for travel expenses. Rios was supposed to receive his payment when he returned the car to the same gas station in Texas. The seven individuals and Rios were determined to be aliens who entered the United States illegally and who were citizens of several countries. Rios confirmed that, although he was not certain, he believed the passengers of the car to be undocumented aliens. The seven passengers were since deported without a sentence of imprisonment, because they had only committed a first-time illegal reentry after prior removal.

## B. District Court Proceedings

The complaint against Rios alleged a violation of 8 U.S.C. § 1326(a), illegal reentry, and seven counts of violating 8 U.S.C. § 1324(a)(1)(A)(ii), transportation of aliens not lawfully present in the United States. He was indicted for seven counts of violating § 1324(a)(1)(A)(ii) and pled guilty to all counts without the benefit of a plea agreement.

Rios's sentencing hearing was conducted in conjunction with the sentencing of another defendant convicted under 8 U.S.C. § 1326(a), illegal reentry. The district court addressed

introductory remarks to both defendants, stressing its understanding of the reasons people come to the United States unlawfully, the recently increased enforcement of immigration laws, and the importance of the deterrent effect of criminal sentencing of those who cross our borders illegally. The district court proceeded to sentence Rios and then the other defendant individually.

According to the presentence report, Rios's offense level after reduction for acceptance of responsibility was thirteen with criminal history of I, resulting in a Guidelines range of twelve to eighteen months of imprisonment with a statutory maximum of ten years for each violation of § 1324(a)(1)(A)(ii) under 8 U.S.C. § 1324(a)(1)(B)(i). The presentence report also showed that Rios was previously removed from the United States via Texas as an inadmissible alien both in 2000 and in 2012, that he had a Texas DUI arrest and a reckless-driving conviction in 2007, and a Texas DUI conviction in 2012. He only received one criminal-history point, for the 2012 DUI conviction. Rios did not object to his presentence report.

During Rios's sentencing hearing, the government requested a sentence of eighteen months, while Rios requested a variance below twelve months. Rios's counsel justified the downward-variance request by pointing out Rios's non-violent treatment of the transported aliens and Rios's not being part of a larger operation.

The district court sentenced Rios to eighteen months. Rios did not object, other than to the court's not granting the downward variance.

On appeal, Rios argues that the length of his prison sentence is procedurally unreasonable based on the statements made by the court during Rios's sentencing.

## II. DISCUSSION

### A. Standard of Review and Statement of Law

This court reviews sentencing decisions deferentially for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007). This review has two separate and distinct components: procedural reasonableness and substantive reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007).

"A district court commits a procedural error by 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Sexton*, 894 F.3d 787, 797 (6th Cir. 2018) (quoting *Gall*, 552 U.S. at 51). Where a sentence is allegedly based on erroneous information, "[t]he defendant must establish that the challenged evidence is materially false or unreliable." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (internal quotation mark and citations omitted). We will find that "the district court abused its discretion only if it based the defendant's sentence on that erroneous information. To determine whether a court relied upon erroneous information, an appellate court should analyze whether the sentence might have been different in the absence of that information." *Id.* at 518 (alterations and internal quotation marks omitted) (quoting *United States v. Wilson*, 614 F. 3d 219, 224 n.3 (6th Cir. 2010)).

Failing to object at all to a procedural error (for example, a district court's miscalculation of the Guidelines range) will subject a procedural challenge to plain-error review. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342–43 (2016).

Under *United States v. Olano*, 507 U.S. 725 (1993), we have discretion to remedy a plain error provided that certain conditions are met: (1) the error has not been intentionally relinquished or abandoned, *id*. at 732–33; (2) the error is plain, i.e., clear and obvious, *id*. at 734; (3) the error

has affected the defendant's substantial rights, *ibid.*, meaning that the defendant "must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez*, 136 S. Ct. at 1343 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 83 (2004)). But even if these conditions are met cumulatively, "the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 732 (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

We review all claims of substantive error for abuse of discretion and reasonableness, affording a rebuttable presumption of reasonableness to a properly calculated sentence that is within the Guidelines. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). Defendants are not required to refer to the "reasonableness" of a sentence to preserve substantive claims for appeal; they simply need to bring the claimed error to the court's attention. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

Substantive reasonableness focuses on whether a sentence is too long and whether "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Bailey*, 931 F.3d 558, 562 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness." *Bailey*, 931 F.3d. at 562 (quoting *Rayyan*, 885 F.3d at 442).

### B. Procedural Reasonableness

Rios argues that his sentence is procedurally unreasonable because the district court relied on clearly erroneous information. Rios claims that the district court relied on an erroneous fact in imposing his sentence when the court made a statement during sentencing that Rios's sentence

was similar to those imposed by the sentencing judge in comparable cases. He argues that the court had a clearly erroneous understanding of its own prior sentences under 8 U.S.C. § 1324.

Rios also claims that his counsel objected to the general reasonableness of the sentence and to the district court's refusal to consider a variance, which preserves the alleged error of the sentencing court. We disagree. Rios did not object to the alleged procedural error during his sentencing hearing. His counsel raised no objections to the corrected presentence report, and had no objections to the imposition of the sentence, other than lodging his objection to the court's not granting a downward variance from the Sentencing Guidelines:

> THE COURT: Counsel, anything you wish I say further about the 3553(a) factors?
>
> MR. MELCHING: No, Your Honor. Thank you.
>
> THE COURT: Ms. Cahoon?
>
> MS. CAHOON: No, Your Honor. We would just respectfully object to the variance.
>
> . . .
>
> THE COURT: Does any—counsel have any objection not previously made to any part of these proceedings?
>
> MR. MELCHING: No, Your Honor.
>
> MS. CAHOON: Nothing additional, Your Honor.

But simply raising objections to the length of the sentence does not preserve an alleged procedural error for appellate review. As the Supreme Court noted,

> [a] defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is "greater than necessary" has thereby informed the court of the legal error at issue in an appellate challenge to the *substantive reasonableness* of the sentence. He need not also refer to the standard of review.

*Holguin-Hernandez*, 140 S. Ct. at 766–67 (emphasis added). *Holguin-Hernandez* further explained that by advocating for a shorter sentence, a defendant "argu[es], in effect, that this shorter sentence would have proved 'sufficient,' while a [longer] sentence . . . would be 'greater

than necessary' to 'comply with' the statutory purposes of punishment. *Id.* at 767 (quoting 18 U.S.C. § 3553(a)).

Rios requested a downward variance from his Sentencing Guidelines range of twelve to eighteen months, citing Rios's benign, non-violent treatment of the transported aliens, his status as a low-level middleman rather than being part of a larger, complex trafficking operation, his lack of criminal history aside from one DUI conviction, and his cooperation with law enforcement. Rios's raising an objection to the sentence on those grounds preserves a potential *substantive* reasonableness error for appellate review. *See Holguin-Hernandez*, 140 S. Ct. at 766–67. But Rios does not challenge the substantive reasonableness of his sentence; instead, he appeals the procedural reasonableness of his sentence, alleging that the sentence was based on a clearly erroneous fact. However, Rios never objected to that allegedly clearly erroneous fact at sentencing. Therefore, we would ordinarily review his sentence under the plain-error standard. Rios counters, however, that applying plain-error review is unfair because it would require that "[his] counsel should have been ready, at sentencing, to anticipate the district court's [allegedly erroneous] statement" and have information in hand, "with no opportunity for confirmation," to challenge that statement immediately or risk forfeiting "all but plain error on review." Thus, he argues that the abuse-of-discretion standard applies. Because it makes no difference to the outcome, we need not decide this issue.

Rios alleges that the district court relied on only two factors in imposing the sentence at the high end of the Guidelines: deterrence and the need to impose a sentence similar to those given in similar cases. In so doing, Rios focuses on one statement made by the district court during his sentencing hearing when imposing a term of eighteen months of imprisonment: "And this is a term that is similar to those that I've imposed in similar cases of this sort." Rios treats this

statement as key to the court's decision to impose a top-of-the-Guidelines sentence and engages on appeal in a laborious analysis of the court's docket in an attempt to disprove the court's statement. He analyzes the judge's cases by court location and offense, arrives at only six comparable cases and, by examining this sample, concludes that his sentence of eighteen months is thirty percent longer than the highest of the sample, and almost double the average sentence in the sample. Effectively, Rios is now fact-checking the court to prove his point that the court relied on a clearly erroneous understanding of its own sentencing practices under 8 U.S.C. § 1324.

But Rios places altogether too much weight on this one passing statement in a hearing where the court also spoke extensively about the recently increased enforcement of immigration laws, about the increase in the severity of sentences in the past two or three years, and about the utmost importance of deterrence, both individual and public. The court stated deterrence as the very reason to impose a top-of-the-Guidelines sentence here:

> The reason for my very severe sentence is very simple. If people can't get beyond the border and have some sense of confidence that they will be able to get behind the border, then it's less likely that they'll try to come to our country. And my purpose is both individual deterrence and public deterrence. Hope that the government undertakes to publicize this sentence, perhaps not here but in the [S]outhwest.

Although Rios was not sentenced in this case under 8 U.S.C. § 1326(a), illegal reentry, his presentence report noted that he was removed from the United States as an "alien inadmissibly" in the country twice before, in 2000 and in 2012. The court was therefore aware that Rios was himself a repeat offender of the immigration laws, aside from his most recent violation of 8 U.S.C. § 1324(a)(1)(A)(ii), transporting aliens not lawfully present in the United States. Rios does not provide sufficient detail on the cases that he contends are comparable for us to determine whether they are in fact comparable. He does not always mention whether the defendants in those cases

were themselves repeat illegal-reentry offenders, nor does he reference the applicable Sentencing Guidelines range in each case.

But even if we were to agree with Rios that we should disregard the hundreds of sentencings related by the sentencing judge when sitting by designation in other jurisdictions, or the recent trend of increasing the length of sentences for immigration offenses, which was explained by the district court, Rios still cannot establish that the district court relied on a clearly erroneous fact.

Rios has not shown that the district court in fact committed an error by making a statement about Rios's eighteen-month sentence being similar to others imposed in similar cases, since Rios focused only on six cases within the Northern District of Ohio handled by his sentencing judge from 2012 to 2018. But during its introductory remarks about increased enforcement and longer sentences, the sentencing court made the following comment:

> A year or so ago I was sitting at a border court Las Cruces, which I've done a great deal often. I've done that off and on for about eight or ten years, Tucson, Phoenix, Las Cruces, Del Rio, Laredo . . . . Last time I was in Las Cruces I handled, I don't know, 100 or so sentencings in a week the week I was there, that's pretty customary.

In his Reply Brief, Rios alleges that his further research yielded only six additional cases from New Mexico, all of which involved sentences shorter than his. While Rios is trying hard to show that the district court committed a clear error by stating that Rios's sentence was comparable to others, we are not convinced. The alleged error of relying on faulty recollection of sentencing practices by the district court was anything but clear, especially as Rios's claim required labor-intensive docket research yielding only tenuous results.

But more importantly, Rios cannot show that the alleged error was material or affected his substantial rights because Rios cannot show that the alleged error "actually served as the basis for the sentence," *Adams*, 817 F.3d at 517 (internal quotation marks and citation omitted), or was

prejudicial, i.e., that it "affected the outcome of the district court proceedings," *Olano*, 507 U.S. at 734.

Rios makes a tenuous argument that the district court's past sentencing practice must have been "an important factor" in imposing his top-of-the-Guidelines sentence, because deterrence alone would have resulted in a lower sentence, based on the actual sentencing history of the district court for § 1324 offenses. Therefore, Rios argues, his own sentence would have been substantially lower if the district court relied on the correct length of other sentences. We disagree.

Rios cannot show that the district court relied on the "fact" that it imposed similar sentences in the past. The challenged statement is just one sentence in a long soliloquy stressing the need for increased deterrence and enforcement of immigration laws. It was included along with sympathetic statements about the situation in places such as Mexico and the judge's personal ties to Latin America, a plea for defendants to think about their families when the breadwinner becomes incarcerated for violations of immigration laws, warnings about cooperation between the police and U.S. Immigration and Customs Enforcement, and commentary about recent technological advances in securing the Southern border. The district court also noted higher sentences for immigration offenses recently compared to two or three years ago and warned Rios that, if he was apprehended again in the United States after his deportation, he would likely receive a sentence of imprisonment of twenty-four months or more. With that as backdrop, a passing remark of the sort "[a]nd this is a term that is similar to those that I've imposed in similar cases of this sort" hardly was determinative of the imposed sentence. This conclusion is supported by the district court's denial of Rios's motion for compassionate release some six months later. The district court rejected Rios's argument that it had sentenced Rios for longer than was appropriate due to the

district court's misunderstanding of its prior sentences in similar cases, stressing that Rios's top-of-the-Guidelines sentence was based on its view that Rios's offense was "very serious."

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's sentence.