NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0229n.06

No. 21-3681

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 07, 2022
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TRAVONTE D. GRIFFIN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

OPINION

---

Before: WHITE, BUSH, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge**. Defendant-Appellant Travonte D. Griffin appeals his 39-month sentence imposed after he pleaded guilty to one count of felon in possession of a firearm. Griffin argues that his sentence is procedurally and substantively unreasonable because the district court speculated about information outside the record before varying two levels above the recommended Guidelines sentence. He also argues that his guilty plea was not knowing, voluntary, and intelligent because he would not have pleaded guilty had he known that the court would vary upward. We AFFIRM.

**I.**

On December 2, 2020, officers of the Akron Police Department stopped Griffin's car at an intersection because it appeared to have a dark window tint, in potential violation of Ohio law. As the officers approached the car, they smelled marijuana and confronted Griffin. Griffin identified himself, admitted that he had marijuana in the vehicle, and complied with the officers' request to exit the car for a search. During the search, the officers found a loaded Taurus model

24/7 .40 caliber pistol between the center console and the driver's seat. After being read his rights and agreeing to speak with the officers, Griffin stated that he carried the gun "for protection" and that he "would rather be caught with a gun" than "without one." R. 33, PID 165. The officers arrested Griffin and subsequently determined that the gun had travelled in interstate commerce and that Griffin had been previously convicted of criminal offenses punishable by more than one year of incarceration.

A federal grand jury charged Griffin with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). At the change-of-plea hearing, the parties presented a plea agreement stipulating that Griffin had a base offense level of fourteen but that the government would recommend a two-level reduction for Griffin's acceptance of responsibility. The agreement also stipulated that the parties had not agreed to a Criminal History category and that they expected the court to determine the category "after the completion of a Pre-Sentence Investigation by the U.S. Probation Office." R. 24, PID 92. The agreement further provided that the parties would recommend a sentence within the range specified by the Sentencing Guidelines, but that Griffin understood this recommendation would not be binding on the court. The agreement also stated that Griffin voluntarily entered into the plea bargain.

At the plea hearing, the court determined that Griffin was mentally and physically competent to proceed with the plea. Griffin confirmed that he had read the agreement and discussed it with his counsel. The court then walked Griffin through the plea agreement and explained that the law allowed it to impose a maximum penalty of ten years' imprisonment and a $250,000 fine. The court explained how the Sentencing Guidelines work and stated that if Griffin had a total offense level of 12 or 14—depending on the two-level reduction for acceptance of responsibility—and a Criminal History category of IV, Griffin's advisory Guidelines range would

be 21 to 30 months. The court explained that it would "start with the range that's correct for you and I ultimately decide what I believe is sufficient, not greater than necessary. And it could be a number different than these, higher or lower." R. 46, PID 256. Griffin confirmed that he understood this. The court then explained that, while it would review the advisory Guidelines range, it could "depart from [that] range" and "[i]f on the day of sentencing" it were to "disappoint" Griffin by "giving you a longer sentence than you thought I would or you think you deserve, it doesn't matter what the reason is but you're disappointed, that is not a good reason, that is not a bas[i]s for you to withdraw your plea of guilty." *Id.* at 250, 252. Griffin repeatedly stated that he understood. At the end of the plea colloquy, Griffin had no questions for the court. The court then accepted Griffin's guilty plea to the felon-in-possession charge.

Before sentencing, the probation department filed a presentence report (PSR) recommending a base offense level of fourteen with a two-level reduction for acceptance of responsibility, for a total offense level of 12. The PSR additionally recommended a Criminal History category of V,[1] and a total Guidelines imprisonment range of 27 to 33 months. The PSR noted that Griffin's "history and characteristics" might warrant a possible variance from the Guidelines. R. 33, PID 183. Neither party objected to the PSR.

At the sentencing hearing, the district court accepted the PSR calculation of the offense level of 12 (after a two-level reduction for acceptance of responsibility) and a Criminal History category of V, for a Guidelines range of 27 to 33 months. However, it stated that it would vary

---

[1] Griffin's adult criminal history included: one state conviction at age 18 for having weapons while under disability and one for possession of cocaine; one state conviction at 19 for drug abuse; one state conviction at 20 for escape; one state conviction at 22 for assault; one state conviction at 23 for unauthorized use of property; one federal conviction at 23 for felon in possession of a firearm; one state conviction at 27 for attempted failure to comply with the order or signal of a police officer; and one state conviction at 29 for attempted trespass in a habitation. The PSR additionally noted that Griffin's supervision was adjusted or revoked for several of these convictions due to noncompliance with the terms of release.

two levels upward, to an offense level of 14 with a Criminal History category of V, for a new range of 33 to 41 months. The court then sentenced Griffin to 39 months' imprisonment: six months more than the upper limit of the recommended Guidelines. It explained that it was doing so because of Griffin's "abysmal" criminal history and its concern about Griffin's "respect for the law." R. 47, PID 289, 291. The court reviewed Griffin's criminal history and stated that it had not "seen a record of so little compliance with the terms of a federal term of supervised release." *Id.* at 300. The court discussed Griffin's prior convictions and repeated failures to comply with state and federal terms of release, including an AWOL allegation in the prior federal gun case. The court also called "frightening" Griffin's statement on arrest that he "believe[s he's] safer with a gun," *id.* at 301, and emphasized that Griffin was "facing [his] third gun violation." *Id.* at 290. In considering Griffin's proffered reasons for carrying the gun, the court noted that:

> [T]he last paragraph [of Griffin's sentencing memo] . . . says, "In 2017, Defendant has had several close friends murdered in Akron. He began carrying a weapon for his own protection, based on the fear of the neighborhood he lived in."
>
> The last thing he says, "He also feared for his safety because he was employed and always has money on his person."
>
> When I read that, I thought, "Hm, I don't remember employment being a significant part of this [PSR]," and it isn't. When I go back to Paragraph 60 of the [PSR], it says—Paragraph 60 of the [PSR], Page 16, "The Defendant did not report a recent history of employment. He advised that he has worked with various staffing agencies in the past in several locations. The Defendant explained he worked as a laborer and was paid minimum wage."
>
> So if he had a lot of money, I wonder where he was getting it.
>
> But in any case, I'm concerned about respect for the law.

*Id.* at 291.

The court then stated that "the Guidelines are meant for the heartland, for the average defendant," *id.* at 302, and that Griffin was "not the typical Defendant. [His] past behavior to

corrections imposed by the criminal justice system, state and federal, have been so inappropriate that a lesser sentence for the same crime would be a ridiculous response and unfair to [him] in the long-term." *Id.* at 304. The court considered as mitigating factors Griffin's lack of parental support as a child and his current role as a caretaker for his grandmother and children, but stated that it believed the sentence would nonetheless help "keep [Griffin] in the community and to have [him] act like somebody who deserves to be there." *Id.* at 303. The court also thought it "significant to note that many of the criminal offenses that [Griffin] has committed indicate at least a threat of violence, particularly toward the women in his life." *Id.* at 293. Finally, the court stated that it would not give Griffin "a sentence less than the one [he] started with, 37 months," apparently referring to Griffin's sentence of 37 months for his prior federal felon-in-possession conviction, after which he went AWOL from pretrial supervision, was re-arrested and sent to prison to serve out the term of his sentence, and was then sentenced to a subsequent year in prison for violating the terms of his supervised release. *Id.* at 305; *see also* R. 33, PID 171–73 (PSR description of these incidents); R. 47, PID 301 (the district court stating earlier during its review of Griffin's criminal history that "because of your noncompliance, despite being given the 37-month sentence [for the first federal felon-in-possession conviction], longer than what the Guidelines suggest for you today, you were revoked at six months. But that wasn't enough. Ultimately, you were revoked and given a 12-month sentence. . . . So I'm wondering when is enough going to be enough?").

After the court pronounced the sentence, Griffin's counsel objected "to the two-level variance being greater than necessary to accomplish the purposes of sentencing." *Id.* at 314. Griffin appeals on the grounds that his sentence was procedurally and substantively unreasonable and that he did not enter his plea knowingly, voluntarily, and intelligently.

**II.**

While we typically review the reasonableness of a defendant's sentence under the abuse-of-discretion standard, we review it for plain error instead when "the defendant fails to lodge any objection at the end of the sentencing hearing in response to a properly worded invitation from the court." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013) (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (cleaned up)). A district court plainly errs when it (1) errs, (2) obviously or clearly, (3) in a manner that "affected the defendant's substantial rights," and (4) "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Houston*, 529 F.3d 743, 750 (6th Cir. 2008) (cleaned up).

"We review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently," and "the underlying factual bases relied upon by the district court are reviewed for clear error." *Catchings*, 708 F.3d at 716 (quoting *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)).

**III.**

**A.**

Griffin first argues that the district court erred by imposing a sentence that was both procedurally and substantively unreasonable. *See Gunter*, 620 F.3d at 645 (noting that the reasonableness of a sentence "has both a procedural and a substantive component"). A sentence is procedurally unreasonable if it is

> marked by "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."

*Houston*, 529 F.3d at 753 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). A sentence is substantively unreasonable if it is "greater than necessary to comply with the purposes of sentencing."[2] *Id.* at 755.

**1.**

Griffin argues that his sentence is procedurally unreasonable because the district court "select[ed] a sentence based on clearly erroneous facts" when it "relied upon improper speculation that [Griffin] was engaged in illegal activity to obtain cash." Appellant's Br. at 9 (quoting *Gall*, 552 U.S. at 51). Griffin points to two of the court's statements as evidence of improper speculation: its statement that "So if [Griffin] had a lot of money, I wonder where he was getting it," and its statement that "[m]ost of us are never robbed. Those people who are, are usually robbed because they're suspected of doing something other than being a laborer, working hard, and going home after work." *Id.* at 9–10 (quoting R. 47, PID 291, 303).

A defendant alleging that the district court relied on "clearly erroneous facts" must establish two things: first, that "the challenged evidence is materially false or unreliable," and second, "that such false or unreliable information actually served as the basis for the sentence." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)). It is reversible error for a district court to rely on clearly erroneous facts for sentencing even if the court also "relied on a number, even a large number, of

---

[2] Griffin objected generally at the end of sentencing "to the two-level variance being greater than necessary to accomplish the purposes of sentencing." R. 47, PID 314. This is an objection to the sentence's substantive unreasonableness, *Houston*, 529 F.3d at 753, but not to its procedural unreasonableness. Thus, we apply plain-error review to Griffin's procedural unreasonableness challenge and abuse-of-discretion review to his substantive unreasonableness challenge. *See id.*

relevant facts in its sentencing." *United States v. Aguilar-Calvo*, 945 F.3d 464, 466 (6th Cir. 2019) (quoting *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008)).

The first statement identified by Griffin—"[s]o if [Griffin] had a lot of money, I wonder where he was getting it"—was not materially false or unreliable. Griffin characterizes this statement as "improper speculation that [he] was engaged in illegal activity to obtain cash." Appellant's Br. at 9. But the record does not support this. When the district court made this statement, it was commenting on Griffin's assertion, in his sentencing memorandum, that he carried a gun because he "feared for his safety because he was employed and always has money on his person." R. 47, PID 291. But Griffin's memorandum did not describe his employment, and as the court noted, his statement that he was employed conflicted with the PSR's statement that Griffin "did not report a recent history of employment. He advised that he has worked for various staffing agencies in the past that sent him to several locations to work. The defendant explained that he worked as a laborer at each location and was paid minimum wage." R. 33, PID 177. The court noted that, upon reading Griffin's memorandum, it "thought, 'Hm, I don't remember employment being a significant part of this [PSR], and it isn't. . . . So if he had a lot of money, I wonder where he was getting it." R. 47, PID 291. Following the court's observation, Griffin's counsel confirmed that "as the Court appropriately pointed about [sic], [Griffin] did not really have stable, secure, long-term employment," however, Griffin carried what money he did have on his person because "he didn't have a bank account." *Id.* at 296. The court seemed to accept this explanation, because it noted that it would be "smarter" for Griffin to "put that money in the bank." *Id.* at 302. In proper context, the court's musing about the source of Griffin's money, if in fact he was carrying a gun just to protect it, was not a materially false or unreliable statement, but was a

comment in an attempt to reconcile the conflicting information the court had received about Griffin's employment. *See United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019).

The second statement identified by Griffin—"Most of us are never robbed. Those people who are, are usually robbed because they're suspected of doing something other than being a laborer, working hard, and going home after work"—is more problematic. The court made this statement while discussing Griffin's reasons for keeping the gun, and noted

> What is it going to take to keep you in the community and to have you act like somebody who deserves to be there? And this notion, "I'd rather have a gun than not," move. Move someplace where nobody knows you. Nobody's going to just pick you out of a crowd and say there's a guy with cash in his pocket. They're not. Most of us are never robbed. Those people who are, are usually robbed because they're suspected of doing something other than being a laborer, working hard, and going home after work.

R. 47, PID 303.

Griffin argues that this statement relied "upon vague opinions or beliefs" that were "unsupported by any studies or statements of authority." Appellant's Br. at 11. Yet we need not decide whether Griffin is correct because the record does not demonstrate that this statement "actually served as the basis for [Griffin's] sentence." *Adams*, 873 F.3d at 518. In *Adams*, we concluded that the district court considered an improper sentencing factor when, after the government incorrectly informed the court that it had "evidence that drug-treatment programs less than a year in length are ineffective because the brain of an addicted person requires at least eighteen months without abusing drugs to 'reset,'" the court imposed an eighteen-month imprisonment sentence and stated that it had done so because Adams "need[ed] that long to *reset*." *Id.* at 519; *see also United States v. Hughes*, 283 F. App'x 345, 353–54, 345 n.7 (6th Cir. 2008) (concluding that the court relied on unreasonable speculation in its sentencing when it ordered Hughes to make restitution payments to the victim bank and stated "I feel that that's all the bank

really wants anyway," because such a statement "impl[ied] that it considered what sentence the bank might prefer that it impose," "there was no support in the record" for that statement, and because "the district court did not explain why the particular desires of this victim should affect the legal analysis necessary for sentencing Hughes"). Conversely, we have found no procedural error when the court made an improper statement but did not connect that statement to its consideration of the sentence and when it provided enough information to explain adequately its decision. *See Adams*, 873 F.3d at 519 (concluding that the district court improperly mischaracterized a recidivism study during sentencing proceedings, but that the court did not rely on this mischaracterization in calculating the sentence because the "court was clearly focused on [the defendant]'s own pattern of recurring crime and his repeated contacts with the criminal justice system and not a generally applicable study"); *see also United States v. Van*, 541 F. App'x 592, 596 (6th Cir. 2013) (concluding that a sentence was not procedurally unreasonable because, while "[t]he court did appear to draw an inappropriate conclusion that Van was involved in a more serious criminal 'scheme,' . . . it is not obvious or clear that the court actually based Van's sentence on this suspicion" and "the court explained [why] it was imposing a harsher sentence").

Griffin's only argument that the court relied on the improper speculation in sentencing him is that the court imposed its sentence immediately after speculating why Griffin might fear being robbed. Appellant's Br. at 14 ("[T]he District Court, immediately before imposing the sentence, doubled down on the speculation regarding Mr. Griffin's finances."). But that the speculation occurred just before the pronouncement of the sentence does not mean that the court improperly relied on that speculation. Tellingly, the court's pronouncement of the sentence did not discuss Griffin's sources of income or activities outside the record. The court instead repeatedly emphasized that it was concerned about Griffin's recidivism and disregard for his prior

sentences—particularly his conviction in the earlier federal felon-in-possession case. *See, e.g.*, R. 47, PID 302 ("I don't think the Guidelines anticipate someone who's looking at the third gun conviction, second federal conviction, that was—the sentence was completed within a year or two years max before you even caught this new case. So I don't think the Guidelines are appropriate for you."). The court stated that it was varying two levels upward because Griffin's past disregard of both federal and state sentences would render a within-Guidelines sentence "ridiculous" and "unfair to [Griffin] in the long term," and it chose the 39-month sentence specifically because it would "not give [Griffin] a sentence less than the one [he] started with [in the prior federal gun case], 37 months." *Id.* at 304–05. The court considered Griffin's mitigating circumstances and addressed the arguments he made both in the sentencing memorandum and in response to its questions. It thus adequately explained, by reference to legitimate and relevant factors, why it was imposing a harsher sentence. *See Adams*, 873 F.3d at 519.

Accordingly, Griffin has not demonstrated that the court plainly erred in fashioning his sentence. *Houston*, 529 F.3d at 750.

**2.**

Griffin's argument that the court's sentence was substantively unreasonable is identical to his argument that the sentence was procedurally unreasonable; he states "[s]peculation about undisclosed crimes that may have been committed by the Defendant, wholly unsupported by the record, constitutes grounds for vacating the sentence as being substantively unreasonable." Appellant's Br. at 15. However, a claim that the district court engaged in "unreasonable speculation . . . [is] simply another way of saying that the district court 'select[ed] a sentence based on clearly erroneous facts,'" . . . [and] sounds in procedural, not substantive, reasonableness." *Parrish*, 915 F.3d at 1047 (quoting *Gall*, 552 U.S. at 51); *see also United States v. Rayyan*, 885

F.3d 436, 442 (6th Cir. 2018) ("The point [of substantive reasonableness] is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness.").

Griffin does not otherwise challenge the substantive reasonableness of his sentence on appeal, including the court's consideration of his § 3553 factors or the variance. Accordingly, we do not address this claim further.

**B.**

Griffin next argues that his guilty plea is invalid. To satisfy the requirements of the Fifth Amendment's Due Process Clause, a federal defendant's guilty plea must be "voluntary," "knowing," and intelligent—that is, voluntarily made while "the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1962) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Specifically, Griffin argues that he "would not have pled guilty, and waived his constitutional rights associated with trial, if he was not able to obtain the benefit associated with the acceptance of responsibility credit."[3] Appellant's Br. at 16.

Griffin does not argue that he misunderstood the terms of the plea agreement; that the district court, the lawyers, or anyone else confused or misled him; or that he did not grasp the potential consequences of pleading guilty. Nor, on this record, could we find any indication that Griffin's plea was anything but knowing, voluntary, and intelligent. The signed plea agreement specified that Griffin understood the parties' sentencing recommendations would not be binding on the court, and Griffin confirmed, prior to pleading guilty, that he discussed the agreement with

---

[3] Griffin does not argue that the district court failed to comply with the plea colloquy requirements under Rule 11 of the Federal Rules of Criminal Procedure.

his attorney and did not need more time to do so. Additionally, the district court determined that Griffin was physically and mentally competent to proceed with the plea and engaged in a thorough colloquy with him—explicitly explaining the possibility that if he pleaded guilty, the court might "disappoint" Griffin by giving him "a longer sentence than you thought I would or you think you deserve." R. 46, PID 252. Griffin confirmed that he understood this. After Griffin pleaded guilty, the court settled on a Guidelines range that neither party challenged—and which took into consideration Griffin's acceptance-of-responsibility credit—but then determined, as it warned it might, that the calculated range was "insufficient." R. 47, PID 303. There is nothing on this record to undermine the conclusion that Griffin, throughout the plea process, "possess[ed] an understanding of the law in relation to the facts," and knowingly, voluntarily, and intelligently entered his plea. *McCarthy*, 394 U.S. at 466.

## IV.

For the foregoing reasons, we AFFIRM.